STATE OF NORTH CAROLINA v. DONALD KEVIN WASHBURN, DEFENDANT

No. COA09-72

(Filed 17 November 2009)

**Search and Seizure— motion to suppress drugs—narcotics dog—hallway outside storage unit**

The trial court did not err in a controlled substances case by denying defendant's motion to suppress evidence obtained from searches of his home and storage unit. The police were lawfully present in the common hallway outside the storage unit with a narcotics dog, and there was probable cause for a search warrant for his house based on the search of the storage unit and the statements of an informant.

Appeal by defendant from judgments entered 17 September 2008 by Judge William Z. Wood, Jr. in Forsyth County Superior Court. Heard in the Court of Appeals 31 August 2009.

STATE v. WASHBURN

[201 N.C. App. 93 (2009)]

*Roy Cooper, Attorney General, by Grady L. Balentine, Jr., Special Deputy Attorney General, for the State.*

*A. Wayne Harrison, for defendant.*

MARTIN, Chief Judge.

Defendant was indicted on charges of felony possession of cocaine pursuant to N.C.G.S. § 90-95(d)(3), possession of drug paraphernalia pursuant to N.C.G.S. § 90-113.22, maintaining a dwelling for keeping or selling controlled substances pursuant to N.C.G.S. § 90-108(a)(7), maintaining a storage unit or a building to keep or sell controlled substances pursuant to N.C.G.S. § 90-108(a)(7), possession with intent to manufacture, sell, or deliver cocaine pursuant to N.C.G.S. § 90-95(a)(1), possession with intent to sell or deliver Dihydrocodeinone pursuant to N.C.G.S. § 90-95(a)(1), trafficking in opium-possession pursuant to N.C.G.S. § 90-95(h)(4), and resisting a public officer pursuant to N.C.G.S. § 14-223. He moved to suppress evidence seized from searches of a rented storage unit and from his residence.

The evidence at the suppression hearing tended to show that on 18 September 2006, Line Sergeant R.K. Smith ("Sergeant Smith") of the Kernersville Police Department received a tip from an informant who had been providing accurate information to him for thirteen years. The informant told Sergeant Smith that defendant kept a large quantity of drugs in a blue toolbox in his garage and rented a climate-controlled storage unit somewhere within the Kernersville town limits. In addition, the informant told Sergeant Smith defendant's name and address, the model and color of defendant's truck, and defendant's license plate number. Sergeant Smith relayed this information to the Kernersville Police Department's Vice and Narcotics Unit. Officer A.B. Cox ("Officer Cox"), a detective with the unit, received the information and contacted Sergeant Smith for more details.

With this information, Officer Cox began an investigation of defendant's activities, conducting surveillance several times at 4612 Clipstone Lane in Kernersville, North Carolina, the address supplied by the informant, and visiting Shields Road Self-Storage ("storage facility"), the only climate-controlled storage facility in town at that time. He confirmed defendant lived at the address supplied by the informant after finding mail addressed to defendant in garbage collected by the Department of Public Works. In addition, Officer Cox confirmed the informant's information regarding defendant's truck,

**STATE v. WASHBURN**

[201 N.C. App. 93 (2009)]

the presence of a blue toolbox in defendant's garage, and defendant's rental of a storage unit at the storage facility.

In the course of his investigation, on 26 October 2006, Officer Cox requested that Detective Kevin Clodfelter ("Detective Clodfelter") of the Kernersville Police Department's Narcotics Unit perform a random sweep of the storage facility with a dog trained in drug detection. After receiving permission from the manager of the facility, Ben Mastin ("Mr. Mastin"), to enter the facility and search with a K-9 unit, Detective Clodfelter began the search. Detective Clodfelter was not provided any information as to which specific unit was the potential storage unit at issue. Once inside the hallway of the building containing defendant's individual unit, the dog indicated the presence of contraband by alerting on the door of unit 4078-C, defendant's unit.

Detective Clodfelter then left to obtain a search warrant for the unit, and upon his return with the warrant, the lock to defendant's unit was drilled off and the officers entered. Inside the unit, the officers discovered, *inter alia*, drug paraphernalia, a residue of white powder on the floor, and $5,100 in one-hundred-dollar bills. Officer Cox conducted a field test on the white powder, which tested positive for the presence of cocaine. The officers then seized the items found in the storage unit.

After obtaining a warrant based on the evidence seized from the storage unit and information provided by the informant, Officer Cox, accompanied by Detective Clodfelter and Detective Hess, arrived at defendant's 4612 Clipstone Lane residence. Having knocked on defendant's door and receiving no response, the officers entered the residence and found defendant hiding in the attic. The officers then searched defendant's home in accordance with the search warrant.

At the conclusion of the evidence, the trial court denied defendant's motion based on its findings that the hallway outside defendant's storage unit was a public area, the warrants to search the individual unit and residence were properly obtained, and the discovery of drugs in the storage unit combined with other pertinent facts was enough to connect his residence with the possibility of drugs being sold.

Defendant subsequently pled guilty to felony possession of cocaine, possession of drug paraphernalia, maintaining a dwelling for keeping or selling controlled substances, maintaining a storage unit or a building to keep or sell controlled substances, possession with intent to manufacture, sell, or deliver cocaine, and resisting a public

officer. The charges of possession with intent to manufacture, sell, or deliver Dihydrocodeinone and trafficking in opium-possession were dropped. Having properly retained his right to appeal the denial of his motion to suppress, defendant now appeals from the order denying the motion to suppress. We affirm.

In defendant's sole argument before this Court, he contends the trial court erred in denying the motion to suppress evidence obtained from all searches and seizures conducted by the Kernersville Police Department. We disagree.

When analyzing a trial court's denial of a motion to suppress, the scope of review is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Bone*, 354 N.C. 1, 7, 550 S.E.2d 482, 486 (2001) (quoting *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)), *cert. denied*, 535 U.S. 940, 152 L. Ed. 2d 231 (2002). When a defendant has not assigned error to any of the trial court's findings of fact, those findings are conclusive and binding on appeal. *State v. Jacobs*, 162 N.C. App. 251, 254, 590 S.E.2d 437, 440 (2004). "The trial court's conclusions of law, however, are fully reviewable on appeal." *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).

Defendant initially contends that the dog sniff of the hallway outside of his locked storage unit constitutes an illegal warrantless search because he had a reasonable expectation of privacy in the storage facility, including the hallway area. We disagree.

The first clause of the Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[T]he touchstone of the Fourth Amendment analysis has been whether a person has a constitutionally protected reasonable expectation of privacy." *State v. Phillips*, 132 N.C. App. 765, 770, 513 S.E.2d 568, 572 (internal quotation marks omitted), *disc. review denied and appeal dismissed*, 350 N.C. 846, 539 S.E.2d 3 (1999). Such an unreasonable search "occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113, 80 L. Ed. 2d 85, 94 (1984).

Official conduct that does not compromise any legitimate interest in privacy is not a search subject to the Fourth Amendment. *Id.* at 123, 80 L. Ed. 2d at 101. Any interest in possessing contraband cannot

be deemed legitimate, and thus, governmental conduct that only reveals the possession of contraband does not compromise any legitimate privacy interest. *Id.* at 121-23, 80 L. Ed. 2d at 99-101.

The United States Supreme Court discussed the Fourth Amendment implications of a canine sniff in *United States v. Place.* 462 U.S. 696, 77 L. Ed. 2d 110 (1983). There, the Court treated the sniff of a well-trained narcotics dog as *sui generis* because the sniff "disclose[d] only the presence or absence of narcotics, a contraband item." *Id.* at 707, 77 L. Ed. 2d at 121. As the United States Supreme Court explained in *Illinois v. Caballes*, since there is no legitimate interest in possessing contraband, a police officer's use of a well-trained narcotics dog that reveals only the possession of narcotics does not compromise any legitimate privacy interest and does not violate the Fourth Amendment. 543 U.S. 405, 408-09, 160 L. Ed. 2d 842, 847 (2005).

In the present case, the officers' use of the dog to sweep the common area of a storage facility, alerting them to the presence of contraband in defendant's storage unit, did not infringe upon defendant's Fourth Amendment rights. As defendant had no legitimate interest in possessing contraband, there has been no legitimate privacy interest compromised which the Fourth Amendment seeks to protect. *Id.* Therefore, the question before this Court is whether the police were lawfully present in the hallway area of the storage facility in order to permit the dog sniff. *See United States v. Brock*, 417 F.3d 692, 697 (7th Cir. 2005); *United States v. Roby*, 122 F.3d 1120, 1124-25 (8th Cir. 1997); *United States v. Venema*, 563 F.2d 1003, 1005 (10th Cir. 1977).

It is well-settled that when a third party with common authority over a home or other protected area consents to a search, the need for a search warrant is obviated. *Georgia v. Randolph*, 547 U.S. 103, 106, 164 L. Ed. 2d 208, 217 (2006) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 111 L. E. 2d 148 (1990); *United States v. Matlock*, 415 U.S. 164, 39 L. Ed. 2d 242 (1974)). In *United States v. Brock*, the officers were granted consent to search the common areas of a residence by a resident with common authority over that area. 417 F.3d at 697. Because of this consent, the entry of the dog into that common space did not infringe on the other roommate's legitimate expectation of privacy. *Id.* The Court reasoned that consent granted by a third-party to search shared property is based on a "reduced expectation of privacy in the premises or things shared with another." *Id.* (internal quotation marks omitted). "When someone shares an apartment or a home with another individual, he ordinarily assumes the risk that a

co-tenant might consent to a search, at least to all common areas and those areas to which the other has access." *Id.* (internal quotation marks omitted).

The Eighth Circuit has also concluded that the use of a dog sniff in a common area is not a search. *Roby*, 122 F.3d at 1124-25. There, the Court considered whether a canine sniff in the common corridor of a hotel intrudes upon a legitimate expectation of privacy. *Id.* at 1124. The Court determined that, although there is a reasonable expectation of privacy in one's hotel room, a privacy expectation does not extend to the corridor outside the hotel room as that area is traversed by many people. *Id.* at 1125. The Court also noted that the fact that a dog is more skilled at odor detection than a human does not render the sniff illegal. *Id.* at 1124-25.

Similarly, in *United States v. Venema*, the Tenth Circuit held that the dog sniff of the areaway in front of the defendant's rented storage locker did not constitute a search. 563 F.2d at 1005-06. There, the Court reasoned that, while the area inside the locker itself was private, the area in front of the locker was semi-public in nature. *Id.* at 1005. Since the officers brought the dog on the premises with the owner of the storage company's consent, they were there lawfully, and did not implicate the Fourth Amendment. *Id.* at 1005-06.

In the present case, the facts are substantially similar to the cases cited above. The police officers were lawfully present in the common hallway outside defendant's individual storage unit. The storage facility, in which renters obtain access into the gated facility by way of a personalized access code, consists of several buildings divided into four or five sections, with each section containing fifteen units. The doors to the individual units line hallways inside the various buildings, and the individual units are secured by the individual renters' locks. The hallway at issue, as with all of the common areas in the facility, was open to every person who had an access code and any invited guests. The police department also had its own access code to the storage facility, which had previously been supplied to it by a person with common authority over the building, the facility manager, Mr. Mastin. On the particular day at issue, Officer Cox and Detective Clodfelter obtained additional permission to access the common areas with a drug dog from Mr. Mastin.

Because this hallway area was open to any individual who rented a storage unit, facility management, guests of renters, and representatives from the police department, it was a common area and de-

fendant could not possibly have possessed a reasonable expectation in the hallway area. Thus, with Mr. Mastin's consent, the officer's were lawfully present in the hallway. Since the police were lawfully present in the common hallway, the use of the drug dog in that area did not infringe on defendant's legitimate privacy interests. Accordingly, a search warrant for the hallway area was not needed.

Defendant argues this case requires a different result and relies on the Second Circuit's decision in *United States v. Thomas*. 757 F.2d 1359 (2nd Cir. 1985). There, the Court rejected the notion that "a sniff can never be a search." *Id.* at 1366. Basing its decision on the "heightened privacy interest that an individual has in his dwelling place," *id.*, the Second Circuit reasoned that "the defendant had a legitimate expectation that the contents of his closed apartment would remain private, that they could not be 'sensed' from outside his door. Use of the trained dog impermissibly intruded on that legitimate expectation." *Id.* at 1367.

*Thomas*, however, is criticized in that its proposition "conflicts with the Supreme Court's determination that [n]o legitimate expectation of privacy is impinged by governmental conduct that can reveal nothing about noncontraband items." *United States v. Lingenfelter*, 997 F.2d 632, 638 (9th Cir. 1993) (internal quotation marks omitted). We join the Ninth Circuit's reasoning and hold that defendant had no expectation of privacy in the common hallway of the storage facility, making the dog sniff permissible within the confines of the Fourth Amendment.

In addition, defendant contends the police did not have probable cause or reasonable suspicion to believe contraband was contained in his storage unit before deciding to access the adjoining hallway with a drug dog, thus making the subsequent actions illegal under the Fourth Amendment. We disagree. As we have already determined that the dog sniff was not a Fourth Amendment search, probable cause was not a prerequisite for the entry. *See United States v. Whitehead*, 849 F.2d 849, 855 (4th Cir. 1988) (holding that police were not required to have probable cause before bringing trained dogs into passenger train sleeping compartment to sniff for narcotics). Therefore, defendant's contention fails.

Defendant next argues that because the dog sniff was a violation of his Fourth Amendment rights, the subsequent search warrant of the individual storage unit and the evidence obtained therefrom were invalid. We disagree.

As discussed above, the drug dog was lawfully present in the storage facility, and the information obtained from its sweep was valid. In addition, a positive alert for drugs by a specially trained drug dog gives probable cause to search the area or item where the dog alerts. *See United States v. Jeffus*, 22 F.3d 554, 557 (4th Cir. 1994). As such, the drug dog's alert in the present case provided the requisite probable cause to search defendant's storage unit. Thus, the search warrant for the storage unit was valid and the evidence procured from the subsequent search was properly within the police's possession. Accordingly, defendant's argument to the contrary fails.

Lastly, defendant contends that, even if the evidence from his storage facility was properly obtained, there was no nexus between the presence of drugs in the storage unit and the existence of drugs at his house to provide the requisite probable cause for the search warrant of his residence. Again, we disagree.

The general rule, pursuant to the Fourth Amendment of the United States Constitution and Article I, Section 20 of the North Carolina Constitution, is that issuance of a warrant based upon probable cause is required for a valid search warrant. *See State v. Jones*, 96 N.C. App. 389, 397, 386 S.E.2d 217, 222 (1989), *appeal dismissed and review denied*, 326 N.C. 366, 389 S.E.2d 809 (1990). An application for a search warrant must contain a statement supported by allegations of fact that there is probable cause to believe items subject to seizure may be found on the premises sought to be searched. *See* N.C. Gen. Stat. § 15A-244 (2007). Under the "totality of the circumstances" standard adopted by our Supreme Court for determining the existence of probable cause:

> [t]he task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing] that probable cause existed."

*State v. Arrington*, 311 N.C. 633, 638, 319 S.E.2d 254, 257-58 (1984) (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39, 76 L. Ed. 2d 527, 548 (1983)).

When the application is based upon information provided by an informant, the affidavit should state circumstances supporting the

informant's reliability and basis for the belief that a search will find the items sought. *State v. Crawford*, 104 N.C. App. 591, 596, 410 S.E.2d. 499, 501 (1991). A showing is not required "that such a belief be correct or more likely true than false. A practical, nontechnical probability is all that is required." *State v. Zuniga*, 312 N.C. 251, 262, 322 S.E.2d 140, 146 (1984). Further, a magistrate's determination of probable cause should be given great deference, and an "after-the-fact scrutiny should not take the form of a *de novo* review." *Arrington*, 311 N.C. at 638, 319 S.E.2d at 258.

In addition, this Court has held that "firsthand information" of contraband seen in one location will support a search of a second location. *State v. McCoy*, 100 N.C. App. 574, 577-78, 397 S.E.2d 355, 357-58 (1990) (citing *State v. Mavrogianis*, 57 N.C. App. 178, 291 S.E.2d 163, *disc. review denied*, 306 N.C. 562, 294 S.E.2d 227 (1982)). However, evidence obtained in one location cannot provide probable cause for the search of another location when the evidence offered does not "implicate the premises to be searched." *State v. Goforth*, 65 N.C. App. 302, 308, 309 S.E.2d 488, 493 (1983) (holding that conclusory statements in the supporting affidavit that two people were going to a certain location to buy drugs and evidence that these two individuals in fact went to that location was insufficient to implicate the premises and therefore provide probable cause to search that residence); *see also State v. Campbell*, 282 N.C. 125, 131, 191 S.E.2d 752, 756-57 (1972) (holding that statements that defendants sold drugs in other parts of town and lived in the residence to be searched did not implicate the residence as a place where drugs would likely be found and therefore there was no probable cause for a search warrant of that residence).

In the present case, there was sufficient evidence offered in support of the search warrant for defendant's residence to provide probable cause to believe that contraband would be found in that location. First of all, Officer Cox, in his affidavit, offered proof of illegal drugs, which we have already determined were lawfully seized, found in defendant's storage unit. In addition, Officer Cox provided statements made by an informant that defendant stored additional drugs in a blue tool box at his residence. Assuming the informant is reliable and provides a basis for his belief that illegal drugs would be found, *see Crawford*, 104 N.C. App. at 596, 410 S.E.2d at 501, his testimony, taken in conjunction with the evidence seized from the storage unit, sufficiently implicates defendant's residence as one where contraband would likely be discovered, providing ample probable cause.

Thus, the only issue left for this Court to address is the informant's reliability and basis for his belief. *Id.*

Though it is true that an informant's statements cannot blindly provide probable cause for a search warrant, there is no reason, given the circumstances in this case, to doubt this informant's reliability and basis of knowledge. *See id.* at 595-96, 410 S.E.2d at 501-02. First of all, the informant's reliability is clearly supported by facts established in Officer Cox's affidavit. Specifically, the affidavit established that Sergeant Smith spoke with a source from whom he had been receiving accurate information for nearly thirteen years. As in *Illinois v. Gates*, where the letter received from the informant was referred to another officer to pursue the information, 462 U.S. at 225, 76 L. E. 2d at 540, Sergeant Smith referred the tip to the narcotics unit for Officer Cox to conduct the investigation. One notable difference, however, is that in *Gates* the source was anonymous, *id.*, whereas the informant here had been a trusted source of Sergeant Smith's for many years. So while the source may have initially been unknown to Officer Cox, Sergeant Smith believed him to be reliable based on past experiences. Thus, the informant's reliability is clearly evident.

In addition, the affidavit indicates the informant's basis of knowledge. In the present case, the informant told Sergeant Smith that defendant's name was Kevin Washburn, he lived at 4612 Clipstone Lane, drove a white-over-tan Ford pick-up truck with license plate number XL-2269, kept a large quantity of drugs in a blue toolbox in his garage, and had a climate-controlled storage unit. The informant had attained this information by way of a female waitress at Zoe's Restaurant who had been involved with defendant. Sergeant Smith referred this information to Officer Cox who investigated it. Officer Cox went to the Clipstone Lane address, saw the truck and license plate informant had provided, and confirmed that the vehicle belonged to defendant. Officer Cox returned to the residence on several more occasions to conduct surveillance, and on one of those occasions saw a blue toolbox in the corner of the garage. He was eventually able to confirm this location as defendant's address through mail found in the garbage collected outside the residence. He also confirmed that defendant rented a storage unit at Shields Road Self-Storage. Officer Cox later spoke with the informant himself, who reiterated the information previously given to Sergeant Smith. Given the investigation Officer Cox conducted and his ability to confirm the information the informant provided, the informant's basis and veracity of knowledge is established. Therefore, the totality of the circumstances standard set forth by *Gates* is satisfied.

Accordingly, based on the evidence obtained from the search of defendant's storage unit and the valid statement provided by the informant that drugs were contained in defendant's blue tool box, there was a substantial basis for the magistrate to conclude there was probable cause to believe drugs would be found in defendant's residence. The search warrant of defendant's home is therefore valid and defendant's assignment of error is dismissed.

Thus, we affirm the trial court's denial of defendant's motion to suppress the evidence obtained from both his individual storage unit and his residence.

Affirmed.

Judges HUNTER and BRYANT concur.