TYSON, Judge.
 

 *236
 
 Demarko Donivan Degraphenreed ("Defendant") appeals the trial court's denial of his motion to suppress evidence seized from a search of a vehicle. We affirm.
 

 I. Background
 

 Between January and March 2015, Winston-Salem police officers conducted a drug investigation of Defendant, including surveillance of Defendant's residence located at 301 South Spring Street Unit-A, which is situated at the end of a dead-end street. During January 2015, a confidential police informant arranged over the telephone to meet with
 
 *333
 
 Defendant for the purpose of purchasing heroin. The confidential informant and Defendant purportedly agreed to meet at Defendant's residence. Law enforcement officers provided the confidential informant with an unspecified amount of money to conduct a controlled purchase and observed the confidential informant enter Defendant's residence. Afterwards, the confidential informant surrendered a quantity of heroin to the law enforcement officers, which the informant indicated he had purchased from Defendant.
 

 A couple of months later, in March 2015, the same confidential informant conducted another controlled purchase of heroin at Defendant's residence on behalf of law enforcement. The informant obtained a quantity of heroin, which he advised the law enforcement officers he had purchased from Defendant. During the course of the three month surveillance of Defendant's residence, law enforcement officers observed the confidential informant purchase narcotics from Defendant at the trunk of a vehicle parked on the other side of the road from Defendant's residence. The vehicle was a black 1985 Mercury Grand Marquis (the "Grand Marquis"). Law enforcement officers had observed the vehicle being regularly parked across from Defendant's residence during the course of the three-month investigation.
 

 Based upon the information obtained from the confidential informant, Winston-Salem Police Investigator Ashley Kimel applied for and was issued a search warrant for Defendant's residence at 301 South Spring Street Unit-A on 13 March 2015. Neither Officer Kimel's search warrant application nor the search warrant referenced the Grand Marquis vehicle.
 

 Later on 13 March 2015, Officer Kimel, Officer Patrick McKaughan, and other law enforcement officers executed the search warrant for Defendant's residence. Upon arriving at Defendant's residence, Officer Kimel observed the Grand Marquis parked "adjacent from the residence, across the street." Officer Kimel observed that two of the tires
 
 *237
 
 of the Grand Marquis were partially on the road way and the vehicle was parked parallel to Defendant's residence. There was no other residence on the side of the street the Grand Marquis was parked upon, but a parking lot and a commercial building is located there. Surrounding Defendant's residence was a seven-to-eight-foot-high chain link fence around the sides and back of Defendant's yard and a short wooden fence in the front of the residence.
 

 When the officers executed the search warrant, Officer McKaughan entered Defendant's residence while Officer Kimel crossed the street and approached the Grand Marquis. Officer Kimel requested Officer McKaughan bring his police K-9, named Sassy, outside to sniff the Grand Marquis. Officer McKaughan had Sassy sniff the outside of the Grand Marquis, and the K-9 gave a positive alert for narcotics. Officer Kimel then went inside Defendant's residence to obtain the keys to the Grand Marquis. Another officer inside the residence, Detective Luper, informed Officer Kimel that Defendant had requested a key ring be placed inside his pocket. Officer Kimel retrieved the key ring from Defendant's pocket and found one of the keys located on the key ring unlocked the Grand Marquis.
 

 Upon searching the Grand Marquis, the officers discovered inside the trunk a backpack containing Defendant's wallet, which contained Defendant's social security card and bank cards. Inside the backpack, officers also found a Smith & Wesson .38 caliber revolver, a Raven Arms .25 caliber handgun, a Taurus Millennium PT111 Pro 9mm handgun, two orange prescription pill bottles, one of which contained a plastic bag containing a substance that tested positive for heroin.
 

 The backpack also contained a box of Browning .25 caliber auto ammunition, a digital scale, and a plastic bag containing MDMA and 30 tablets of oxycodone. After searching the VIN number of the Grand Marquis, Officer Kimel discovered the vehicle was registered to Defendant's girlfriend. The officers then arrested Defendant.
 

 On 6 July 2015, Defendant was indicted for trafficking opium or heroin by possession, possession with intent to sell and deliver heroin, possession with intent to sell and deliver oxycodone, possession of a firearm by a felon, possession of marijuana, and possession
 
 *334
 
 of drug paraphernalia. On 27 January 2016, Defendant filed a motion to suppress the evidence seized from the search of the Grand Marquis. In his motion to suppress, Defendant asserted the evidence obtained from the Grand Marquis should be suppressed because no probable cause existed to search the vehicle and the search warrant for Defendant's residence did
 
 *238
 
 not refer to a vehicle. Following a hearing on Defendant's motion to suppress, the trial court orally denied Defendant's motion on 21 March 2016.
 

 The trial court filed a written order (the "Order") denying Defendant's motion to suppress on 23 March 2017. Based upon its findings of fact, the trial court concluded "there was probable cause to search the trunk of the 1985 Grand Marquis."
 

 On 21 March 2017, Defendant pled guilty to all charges, while expressly reserving the right to appeal the denial of his motion to suppress. Defendant was sentenced for trafficking opium or heroin by possession from 70 to 93 months imprisonment and ordered to pay a $50,000 fine. On the charges for possession with intent to sell and deliver heroin, possession with intent to sell and deliver oxycodone, possession of a firearm by a felon, possession of marijuana, and possession of drug paraphernalia, Defendant was sentenced to 10 to 21 months imprisonment, to run concurrently with his sentence for trafficking opium or heroin by possession. Defendant filed timely notice of appeal.
 

 II. Jurisdiction
 

 Jurisdiction lies with this Court pursuant to N.C Gen. Stat. §§ 15A-1444(e) (2017) and 15A-979(b) (2017).
 

 III. Issues
 

 Defendant asserts the trial court erred by denying his motion to suppress. He argues the police officers searched the Grand Marquis vehicle without a search warrant and without probable cause, in violation of the Fourth Amendment of the United States Constitution, as applied to the states through the Fourteenth Amendment. U.S. Const. amend. XIV, § 1 ;
 
 State v. Sanders,
 

 327 N.C. 319
 
 , 331,
 
 395 S.E.2d 412
 
 , 420 (1990),
 
 cert. denied,
 

 498 U.S. 1051
 
 ,
 
 111 S.Ct. 763
 
 ,
 
 112 L.Ed.2d 782
 
 (1991) ("The fourth amendment as applied to the states through the fourteenth amendment protects citizens from unlawful searches and seizures committed by the government or its agents." (citation omitted) ).
 

 Defendant argues, "the trial court's finding that the car was parked within the curtilage of Defendant's residence was unsupported by the evidence, and erroneous as a matter of law" and "the findings of fact which were supported by competent evidence did not support its conclusion of law that probable cause supported the search of the vehicle." Defendant also asserts, for the first time on appeal, the State failed to produce sufficient evidence of the K-9's reliability.
 

 *239
 

 IV. Standard of Review
 

 The scope of this Court's review of a trial court's order denying a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law."
 
 State v. Bone
 
 ,
 
 354 N.C. 1
 
 , 7,
 
 550 S.E.2d 482
 
 , 486 (2001) (quoting
 
 State v. Cooke
 
 ,
 
 306 N.C. 132
 
 , 134,
 
 291 S.E.2d 618
 
 , 619 (1982) ),
 
 cert. denied
 
 ,
 
 535 U.S. 940
 
 ,
 
 122 S.Ct. 1323
 
 ,
 
 152 L.Ed.2d 231
 
 (2002). The trial court's conclusions of law are reviewed
 
 de novo
 
 .
 
 State v. McCollum
 
 ,
 
 334 N.C. 208
 
 , 237,
 
 433 S.E.2d 144
 
 , 160 (1993) (citation omitted).
 

 "In reviewing the denial of a motion to suppress, we examine the evidence introduced at trial in the light most favorable to the State ...."
 
 State v. Hunter
 
 ,
 
 208 N.C. App. 506
 
 , 509,
 
 703 S.E.2d 776
 
 , 779 (2010) (citation omitted).
 

 V. Analysis
 

 A. Curtilage
 

 Regarding curtilage, the trial court concluded, in pertinent part:
 

 16. The street in front of the residence is narrow and a dead end. The vehicle was routinely parked across the street,
 
 in effect becoming part of the curtilage of the premises
 
 , despite the house being surrounded by a fence. (Emphasis supplied).
 

 *335
 
 17. Officer Kimel had probable cause to search the trunk of the Grand Marquis (
 
 curtilage or not
 
 ) after the dog alerted. (Emphasis supplied).
 

 Although the trial court labeled this determination as a finding of fact, the issue of whether an area is located within the curtilage of a home is a question of law.
 
 See
 

 United States v. Dunn,
 

 480 U.S. 294
 
 , 301,
 
 107 S.Ct. 1134
 
 , 1139-40,
 
 94 L.Ed.2d 326
 
 , 334-335 (1987) (establishing a four-factor legal test to determine the boundaries of a home's curtilage). The labels "findings of fact" and "conclusions of law" employed by the lower court in a written order do not determine the nature of our standard of appellate review.
 
 See
 

 Peters v. Pennington
 
 ,
 
 210 N.C. App. 1
 
 , 15,
 
 707 S.E.2d 724
 
 , 735 (2011) (reviewing what was labeled as a "conclusion of law" as a finding of fact). If the lower tribunal labels as a finding of fact what is in substance a conclusion of law, we review that "finding" as a conclusion
 
 de novo
 
 .
 

 Id.
 

 *240
 
 "The United States Supreme Court has ... defined the curtilage of a private house as 'a place where the occupants have a reasonable and legitimate expectation of privacy that society is prepared to accept.' "
 
 State v. Washington
 
 ,
 
 134 N.C. App. 479
 
 , 483,
 
 518 S.E.2d 14
 
 , 16 (1999) (quoting
 
 Dow Chemical Co. v. United States
 
 ,
 
 476 U.S. 227
 
 , 235,
 
 106 S.Ct. 1819
 
 , 1825,
 
 90 L.Ed.2d 226
 
 , 235 (1986) ).
 

 "As a general rule, 'if a search warrant validly describes the premises to be searched, a car [also located] on the premises may be searched even though the warrant contains no description of the car.' "
 
 State v. Courtright
 
 ,
 
 60 N.C. App. 247
 
 , 249,
 
 298 S.E.2d 740
 
 , 742,
 
 appeal dismissed and review denied
 
 ,
 
 308 N.C. 192
 
 ,
 
 302 S.E.2d 245
 
 (1983) (quoting
 
 State v. Reid
 
 ,
 
 286 N.C. 323
 
 , 326,
 
 210 S.E.2d 422
 
 , 424 (1974) ). "The premises of a dwelling house include, for search and seizure purposes, the area within the curtilage ...."
 
 Id.
 
 at 249,
 
 298 S.E.2d at 742
 
 .
 

 The State conceded at oral argument before this Court that the Grand Marquis was not located within the curtilage of Defendant's residence. Nothing indicates Defendant had a reasonable expectation of privacy in the side of a public street opposite to his residence and outside of the confines of the fence surrounding the residence. The trial court's conclusion of law, incorrectly labeled as a finding of fact, is erroneous as a matter of law that the Grand Marquis was "in effect" within the curtilage of Defendant's residence when it was parked upon a public street.
 

 Although the Grand Marquis was located and parked outside of the curtilage of the residence, this conclusion does not automatically warrant a reversal of the trial court's order. The remainder of the trial court's unchallenged findings of fact support its conclusion the police had probable cause to conduct the search of the Grand Marquis based upon: (1) the information relayed to police by the confidential informant; (2) police observation of the confidential informant and Defendant at the Grand Marquis; (3) Defendant having the keys to the Grand Marquis on his person when the search warrant was executed; (4) the K-9 sniff; and, (5) the motor vehicle exception to the Fourth Amendment.
 

 B. Warrantless Searches
 

 Here, the search warrant did not mention the Grand Marquis. "A warrantless search is lawful if probable cause exists to search and the exigencies of the situation make search without a warrant necessary."
 
 State v. Mills
 
 ,
 
 104 N.C. App. 724
 
 , 730,
 
 411 S.E.2d 193
 
 , 196 (1991) (citing
 
 State v. Allison
 
 ,
 
 298 N.C. 135
 
 , 141,
 
 257 S.E.2d 417
 
 , 421 (1979) ).
 

 *241
 
 "Probable cause exists where the facts and circumstances within their [the officers'] knowledge and of which they had reasonable trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed."
 
 State v. Downing
 
 ,
 
 169 N.C. App. 790
 
 , 795,
 
 613 S.E.2d 35
 
 , 39 (2005) (quotation and internal quotation marks omitted). "The existence of probable cause is a 'commonsense, practical question' that should be answered using a 'totality-of-the-circumstances approach.' "
 
 State v. McKinney
 
 ,
 
 361 N.C. 53
 
 , 62,
 
 637 S.E.2d 868
 
 , 874 (2006) (citing
 
 Illinois v. Gates,
 

 462 U.S. 213
 
 , 230-31,
 
 103 S.Ct. 2317
 
 , 2328,
 
 76 L.Ed.2d 527
 
 , 543-44 (1983) ;
 

 *336
 

 State v. Arrington,
 

 311 N.C. 633
 
 , 637,
 
 319 S.E.2d 254
 
 , 257 (1984) ).
 

 "The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions."
 
 United States v. Ross
 
 ,
 
 456 U.S. 798
 
 , 825,
 
 102 S.Ct. 2157
 
 , 2173,
 
 72 L.Ed.2d 572
 
 , 594 (1982) (quotation marks and citation omitted).
 

 An exception to the warrant requirement is the motor vehicle exception.
 
 See
 
 id.
 

 ;
 
 State v. Isleib
 
 ,
 
 319 N.C. 634
 
 , 638-39,
 
 356 S.E.2d 573
 
 , 576-77 (1987) (detailing the automobile exception to the Fourth Amendment's warrant requirement).
 

 "A warrant is not required to perform a lawful search of a vehicle on a public road when there is probable cause for the search."
 
 State v. Baublitz
 
 ,
 
 172 N.C. App. 801
 
 , 808,
 
 616 S.E.2d 615
 
 , 620 (2005) (citation omitted). Under the motor vehicle exception, "A police officer in the exercise of his duties may search an automobile without a search warrant when the existing facts and circumstances are sufficient to support a reasonable belief that the automobile carries contraband materials."
 
 State v. Holmes
 
 ,
 
 109 N.C. App. 615
 
 , 621,
 
 428 S.E.2d 277
 
 , 280 (quotation marks, citation, and ellipses omitted),
 
 disc. rev. denied
 
 ,
 
 334 N.C. 166
 
 ,
 
 432 S.E.2d 367
 
 (1993). "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."
 
 Ross
 
 ,
 
 456 U.S. at 825
 
 ,
 
 102 S.Ct. at 2173
 
 ,
 
 72 L.Ed.2d at 594
 
 .
 

 Concerning a confidential informant, this Court has previously held:
 

 Information from a [confidential reliable informant] can form the probable cause to justify a search.
 
 State v. Holmes
 
 ,
 
 142 N.C. App. 614
 
 ,
 
 544 S.E.2d 18
 
 ,
 
 cert. denied
 
 ,
 
 *242
 

 353 N.C. 731
 
 ,
 
 551 S.E.2d 116
 
 (2001). "In utilizing an informant's tip, probable cause is determined using a 'totality-of-the circumstances' analysis which 'permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip.' "
 
 Holmes
 
 ,
 
 142 N.C. App. 614
 
 , 621,
 
 544 S.E.2d 18
 
 , 22 (2001) (quoting
 
 State v. Earhart
 
 ,
 
 134 N.C. App. 130
 
 , 133,
 
 516 S.E.2d 883
 
 , 886 (1999) ).
 

 State v. Nixon
 
 ,
 
 160 N.C. App. 31
 
 , 37,
 
 584 S.E.2d 820
 
 , 824 (2003).
 

 The trial court's order contains several findings of fact, which are based upon competent evidence in the record to which Defendant does not assign error, including:
 

 2. A confidential and reliable informant (CI) had advised the police that a black male known as "Red" (later determined to be Defendant Demarko Degraphenreed) was selling and distributing heroin from 301 S. Spring Street.
 

 3. The CI made monitored, controlled buys of heroin at that residence from Defendant Degraphenreed prior to issuance of the search warrant (January-March, 2015).
 

 ...
 

 5. During each surveillance, the [Grand Marquis] was backed [into] its parked location, so officers could not view the license plate and ascertain registration/ownership.
 

 6. The CI told officers that Defendant Degraphenreed utilized the vehicle.
 

 7. During one of the CI's purchases, officers observed Defendant Degraphenreed at the trunk of the [Grand Marquis].
 

 ...
 

 12. The keys to the vehicle were on a key ring that was in a bedroom door. Defendant Degraphenreed asked officers in the house to put "his" keys in his pocket. Officer Kimel retrieved the keys to the vehicle from Defendant's pocket.
 

 Defendant does not assign error to these findings. These unchallenged findings are binding upon appeal.
 
 State v. Biber
 
 ,
 
 365 N.C. 162
 
 , 168,
 
 712 S.E.2d 874
 
 , 878 (2011) ("[W]hen ... the trial court's findings of
 
 *243
 
 fact are not challenged on appeal, they are deemed to be supported by competent evidence and are binding on appeal." (citation omitted) ).
 

 In addition, the search warrant for Defendant's residence also expressly authorized the search of Defendant's person. At the
 
 *337
 
 hearing on Defendant's motion to suppress, Officer Kimel testified:
 

 [Officer Kimel]: Detective Luper was standing by with Mr. Degraphenreed in Bedroom NO. 2, which was the child's bedroom and requested the keys from Mr. Degraphenreed, which initially he advised the car did not belong to him. Detective Luper informed me that there were keys that were initially located in the doorknob to this bedroom, and that Mr. Degraphenreed had requested to have his keys, referring to these keys that were in that door be placed in his pocket. Detective Luper advised that he placed the keys in his pocket. And that is where I retrieved the keys from Mr. Degraphenreed and found that one of the keys that were on the key-ring belonged to that vehicle.
 

 Defendant did not object to this testimony at the hearing and Defendant does not challenge the trial court's finding of fact 12, which summarizes this testimony.
 

 C. K-9's Reliability
 

 Beyond the trial court's "finding" that the Grand Marquis was within the curtilage, Defendant argues on appeal the reliability of the K-9 was not sufficiently established by the State to support the trial court's conclusion the officers had probable cause to search the Grand Marquis, pursuant to
 
 Florida v. Harris
 
 ,
 
 568 U.S. 237
 
 , 240,
 
 133 S.Ct. 1050
 
 , 1053-54,
 
 185 L.Ed.2d 61
 
 (2013). However, Defendant is raising the issue of the K-9's reliability for the first time on appeal.
 

 In Defendant's written motion to suppress, the affidavit in support of his motion to suppress, and at the hearing on Defendant's motion to suppress, Defendant only asserted and argued the search warrant not mentioning the Grand Marquis and the Grand Marquis being outside the curtilage of his residence as the reasons the officers did not have probable cause to search the Grand Marquis. At the hearing on the motion to suppress, the trial court and Defendant's trial counsel had the following exchange:
 

 THE COURT: I'll hear from you in just a minute, [Prosecutor].
 

 *244
 
 But [Defense Counsel], I wanted to give you an opportunity, if you wanted to comment. You know, I read the State v. Lowe during the break. I also read and was rereading
 
 Florida v. Harris
 
 , which is [a] United States Supreme court 9-0 opinion in 2013, that basically established that evidence of a dog's satisfactory performance in certification or training is sufficient reason to trust his alert. And then his alert is enough for probable cause.
 

 So it really seems, that an argument can be made that despite the curtilage of the house, or what the search warrant covered, once the dog went out and sniffed the vehicle and alerted, then they had probable cause to search the vehicle.
 
 But particularly, coupled with the knowledge that the vehicle had been present, that the CI had told them the Defendant had been by the trunk of the car.
 
 But the alert of the dog kind of gave them probable cause to go in, it seems to me. But I don't know if you've read that case recently. (Emphasis supplied).
 

 [Defense Counsel]: I'm not familiar with that case Judge but-
 

 THE COURT: It's 568 U.S. I'm not sure of the number, but it was decided February 19th 2013.
 

 [Defense Counsel]: But Judge, even from the dog sniff, if in fact that
 
 only further strengthened
 
 their probable cause at that point in time for a vehicle where they know that it is not his. They're bound to go get a search warrant in that situation to see if even more reason for them to go get a search warrant of that vehicle, compounded with the other factors in the case. They decided not to do that. And no exception applies, Judge, under this fact scenario.
 
 I agree, dog sniff does allow for probable cause.
 
 (Emphasis supplied).
 

 Our appellate courts have repeatedly held a party may not assert a different theory on appeal, which was not raised before the trial court.
 
 State v. Sharpe
 
 ,
 
 344 N.C. 190
 
 , 194,
 
 473 S.E.2d 3
 
 , 5 (1996) ("This Court has long held that where a theory argued on appeal was not raised before the trial court, 'the law does not permit parties to swap horses between courts in order to get a better mount in the Supreme Court.' ") (citing
 
 *338
 

 Weil v. Herring
 
 ,
 
 207 N.C. 6
 
 , 10,
 
 175 S.E. 836
 
 , 838 (1934) );
 
 see also
 

 *245
 

 State v. Benson,
 

 323 N.C. 318
 
 , 321-22,
 
 372 S.E.2d 517
 
 , 518-19 (1988) (holding defendant waived argument where defendant relied on one theory before trial as basis for written motion to suppress and then asserted another theory on appeal).
 

 Defendant did not assert the K-9's purported lack of reliability as a basis for his motion to suppress before the trial court, and his trial counsel conceded a dog's sniff provides a basis for probable cause. Defendant's argument against the K-9's reliability is being raised for the first time on appeal and is waived.
 
 See
 

 Sharpe
 
 ,
 
 344 N.C. at 194
 
 ,
 
 473 S.E.2d at 5
 
 .
 

 With regards to the K-9's open-air sniff, the trial court made the following relevant finding of fact:
 

 11. Sassy performed a free air sniff of the Grand Marquis, gave a positive alert for narcotics and a further alert at the trunk of the vehicle.
 

 Defendant does not contest the K-9 never alerted to the scent of narcotics or otherwise assign error to finding of fact 11. This Court has previously acknowledged that an open-air dog sniff does not constitute a search under the Fourth Amendment:
 

 The United States Supreme Court discussed the Fourth Amendment implications of a canine sniff in
 
 United States v. Place
 
 ,
 
 462 U.S. 696
 
 [
 
 103 S.Ct. 2637
 
 ],
 
 77 L.Ed.2d 110
 
 (1983). There, the Court treated the sniff of a well-trained narcotics dog as sui generis because the sniff disclose[d] only the presence or absence of narcotics, a contraband item.
 
 Id
 
 . at 707 [103 S.Ct. at 2644-45],
 
 77 L.Ed.2d at 121
 
 . As the United States Supreme Court explained in
 
 Illinois v. Caballes
 
 , since there is no legitimate interest in possessing contraband, a police officer's use of a well-trained narcotics dog that reveals only the possession of narcotics does not compromise any legitimate privacy interest and does not violate the Fourth Amendment.
 
 543 U.S. 405
 
 , 408-09 [
 
 125 S.Ct. 834
 
 , 837-38],
 
 160 L.Ed.2d 842
 
 , 847 (2005).
 

 State v. Washburn
 
 ,
 
 201 N.C. App. 93
 
 , 97,
 
 685 S.E.2d 555
 
 , 558 (2009) (internal quotation marks omitted and alteration in original). The open-air sniff by the K-9, Sassy, at Officer McKaughan's direction did not constitute a "search" under the Fourth Amendment.
 
 See
 
 id.
 

 The K-9's positive alert for narcotics at the Grand Marquis provided Officer Kimel with additional factors to find probable cause to conduct
 
 *246
 
 a warrantless search of the inside of the vehicle. "[A] positive alert for drugs by a specially trained drug dog gives probable cause to search the area or item where the dog alerts."
 
 Id.
 
 at 100,
 
 685 S.E.2d at 560
 
 . The K-9's positive alert for narcotics within the Grand Marquis was "sufficient to support a reasonable belief that the automobile carrie[d] contraband materials."
 
 Holmes
 
 ,
 
 109 N.C. App. at 621
 
 ,
 
 428 S.E.2d at 280
 
 .
 

 D. Probable Cause
 

 Based upon the totality of the circumstances, Officer Kimel had probable cause to search the trunk of the Grand Marquis. The trial court's findings of fact reflecting: (1) the controlled purchases by the confidential reliable informant, during which times the Grand Marquis was always present; (2) the officers' observation of a drug transaction taking place at the trunk of the Grand Marquis; (3) the Grand Marquis parked on a public street near Defendant's residence during the officers' investigation; (4) the Defendant's possession of the keys to the Grand Marquis; and (5) the K-9's positive alerts outside of the vehicle for the potential presence of narcotics, provide a reasonable, common-sense basis to support probable cause for the officers to believe narcotics were present inside the Grand Marquis.
 
 See
 

 Nixon
 
 ,
 
 160 N.C. App. at 37
 
 ,
 
 584 S.E.2d at 824
 
 ("Information from a [confidential reliable informant] can form the probable cause to justify a search." (citation omitted) );
 
 Washburn
 
 ,
 
 201 N.C. App. at 100
 
 ,
 
 685 S.E.2d at 560
 
 ("a positive alert for drugs by a specially trained drug dog gives probable cause to search the area or item where the dog alerts").
 

 Based upon the automobile being located on a public road exception to the Fourth Amendment warrant requirement, probable cause justified the officers in conducting the warrantless search of the Grand Marquis.
 

 *339
 

 See
 

 Baublitz
 
 ,
 
 172 N.C. App. at 808
 
 ,
 
 616 S.E.2d at 620
 
 ("A warrant is not required to perform a lawful search of a vehicle on a public road when there is probable cause for the search." (citation omitted) ).
 

 Arguably, the officers had probable cause to search the Grand Marquis even without the K-9 sniff, based upon the controlled purchases by the confidential informant, the officers' observation of Defendant and the confidential informant at the trunk of the Grand Marquis during a controlled purchase.
 
 Nixon
 
 ,
 
 160 N.C. App. at 37
 
 ,
 
 584 S.E.2d at 824
 
 . The K-9's positive alerts for narcotics further supports the conclusion the officers had probable cause to search the Grand Marquis.
 

 The trial court's unchallenged findings of fact support the trial court's conclusion Officer Kimel had probable cause to conduct a
 
 *247
 
 warrantless search of the trunk of the Grand Marquis. Defendant's arguments are overruled.
 

 VI. Conclusion
 

 The trial court misapprehended the law in concluding the Grand Marquis was parked within the curtilage of Defendant's residence. Defendant has waived the issue of the K-9's reliability by not raising the issue before the trial court. The trial court's remaining findings of fact support the trial court's conclusion Officer Kimel had probable cause to search the Grand Marquis, under the totality of the circumstances. The trial court's order denying Defendant's motion to suppress is affirmed.
 
 It is so ordered.
 

 AFFIRMED.
 

 Judges DIETZ and BERGER concur.