IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-377

Filed 6 February 2024

Union County, No. 20CRS54662

STATE OF NORTH CAROLINA

v.

PASTOR EDENILSON GUERRERO, Defendant.

Appeal by defendant from judgments entered 31 August 2022 by Judge Nathan Hunt Gwyn III in Union County Superior Court. Heard in the Court of Appeals 9 January 2024.

*Attorney General Joshua H. Stein, by Assistant Attorney General T. Hill Davis, III, for the State.*

*Law Office of Mark L. Hayes, by Mark L. Hayes, for defendant-appellant.*

FLOOD, Judge.

Pastor Guerrero ("Defendant") appeals his convictions for one count of trafficking in heroin by possession and one count of trafficking in heroin by transportation, arguing the trial court erred (A) in denying his motion to suppress because the information given by a confidential informant and the canine-alert were insufficient to establish probable cause, and (B) because possession is a lesser included offense of trafficking. After careful review, we conclude the canine-alert was sufficient in itself to establish probable cause, and the trial court did not err in sentencing Defendant for trafficking by transportation and possession.

## I. Factual and Procedural Background

On 10 January 2022, Defendant was indicted for one count of trafficking in heroin by possession, one count of trafficking in heroin by transportation, and one count of maintaining a vehicle for controlled substances. Based on a traffic stop that resulted in officers discovering heroin in Defendant's vehicle, the indictment alleged Defendant knowingly possessed twenty-eight grams or more of heroin.

On 10 March 2022, Defendant filed a Motion to Suppress the evidence seized during the search of his vehicle, arguing, in relevant part, that information given by a confidential informant ("C.I.") and a positive drug alert by a canine were insufficient to establish probable cause.

On 13 through 15 July 2022, a suppression hearing was held on Defendant's motion. At the hearing, Ben Baker ("Baker"), a lieutenant with the Union County Sheriff's Office, testified that on 11 November 2020, he received a call from a C.I. regarding heroin trafficking in Union County, North Carolina. The C.I. described to Baker a man in a Honda vehicle who had recently been seen at a known heroin trafficker's residence in Union County. According to Baker, the C.I. specifically described a male wearing a reflective vest whom he had recently seen at a heroin trafficker's home, driving a "light – like a goldish maybe Honda Accord," leaving a Taco Bell in Indian Trail on Highway 74 East. The C.I. also provided Baker with the license plate number for the vehicle. When questioned about his history with this particular C.I., Baker testified that he had received reliable information from this

C.I. over fifty times in the last seven years.

After receiving this report from the C.I., Baker disseminated the information to his team of nine narcotics investigators in Union County. One officer who received the report was Union County Sherriff's Officer Jonathan Presson ("Presson"). Presson testified that he received information to "be on the look out for a silver in color Honda Accord occupied by a single Mexican driver wearing a reflective vest traveling eastbound on Highway 74 leaving the Taco Bell." The report further included information that the driver had "recently" been at a known heroin trafficker's house, but there was no timeline given as to when the driver had been at the trafficker's house. Based on the information Presson received, he believed there was a possibility the driver had illegal drugs in the car.

After receiving this information, Presson responded to the described area of Highway 74 and located a vehicle that matched the description relayed by Baker. Presson followed behind the vehicle and initiated a traffic stop after he observed the vehicle run a red light. When Presson approached the passenger side window of the vehicle, he observed a "single occupant, male Mexican driver" who was "wearing a neon orange shirt with reflective tape on the left and right shoulders."

While Presson was conducting the traffic stop, Detective Robillard ("Robillard"), a canine officer, reported to the scene with her canine, "Yago," and conducted a canine narcotics search around the vehicle. Yago was trained to detect cocaine, methamphetamine, heroin, marijuana, and MDMA, but could not

differentiate between which substances he detected when he "alerted." Yago "alerted" to the vehicle's passenger side door by sitting, indicating that there was an odor of narcotics coming from the inside of the vehicle. The entirety of the canine search lasted less than one minute.

After Yago alerted, Presson and Robillard conducted a search of the vehicle and found a plastic bag that contained a brownish residue that Presson believed to be heroin. No other narcotics were found in the vehicle.

On 29 August 2022, the trial court denied Defendant's Motion to Suppress. In its order, the trial court made the following, relevant, conclusions of law:

> 14. That while Yago was trained to detect and alert to the presence of multiple controlled substances, including marijuana, there is no evidence before this [c]ourt to suggest that marijuana was located in . . . Defendant's vehicle. Accordingly, a canine's inability to differentiate between legal hemp and illegal marijuana does not appear to be relevant to this inquiry;
>
> 15. The evidence before this [c]ourt suggests the only controlled substance located in . . . Defendant's vehicle was believed to be heroin, one of the substances to which Yago alerts;
>
> 16. That the positive alert from Yago provided probable cause to search . . . Defendant's vehicle;
>
> 17. That Det. Presson had probable cause to believe . . . Defendant had drugs in his vehicle when he began searching Defendant's car based on the totality of the circumstances, including but not limited to:
>
>> a. Yago's positive alert for the presence of narcotics on the suspect vehicle;

> b. The corroboration of shared information provided by
> a [C.I.] believed to be a reliable source of information;
>
> c. . . . Defendant's evasive actions in pulling his car off
> the road to an unsafe location, as well as Defendant's
> unusual nervousness under the circumstances.

A jury trial was held from 30 through 31 August 2022. At the conclusion of the evidence, the jury found Defendant guilty of all three counts in the indictment. Defendant was sentenced to two consecutive prison terms of 225 to 282 months for trafficking in heroin by possession and trafficking in heroin by transportation. The trial court entered an arrested judgment for the maintaining a vehicle charge. Defendant gave oral notice of appeal.

## II. <u>Jurisdiction</u>

This Court has jurisdiction to review this appeal from a final judgment of a superior court pursuant to N.C. Gen. Stat. § 7A-27(b) (2021).

## III. <u>Analysis</u>

Defendant presents two issues on appeal: whether the trial court erred in (A) denying Defendant's Motion to Suppress when it based probable cause on an unreliable canine sniff and a C.I. whose reliability could not be adequately challenged after the trial court denied Defendant's Motion to Compel the C.I.'s identity, and (B) sentencing Defendant for possession of heroin when possession is a lesser included offense of trafficking.

### A. Motion to Suppress

Defendant argues the trial court erred in denying his Motion to Suppress because it based probable cause on Yago's unreliable alert and a C.I. whose reliability could not be adequately challenged. We disagree.

Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). Unchallenged findings of fact "are presumed to be supported by competent evidence and are binding on appeal." *State v. Baker*, 312 N.C. 34, 37, 320 S.E.2d 670, 673 (1984) (citation omitted). "The trial court's conclusions of law . . . are fully reviewable on appeal." *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000). Conclusions of law are reviewed *de novo*. *State v. Allen*, 197 N.C. App. 208, 210, 676 S.E.2d 519, 521 (2009).

"[I]t is a well-established rule that a search warrant is not required before a lawful search based on probable cause of a motor vehicle in a public roadway . . . may take place." *State v. Highsmith*, 285 N.C. App. 198, 202, 877 S.E.2d 389, 392 (2022) (citation omitted). Whether probable cause exists "is a 'commonsense, practical question' that should be answered using a 'totality-of-the-circumstances approach.'" *State v. Degraphenreed*, 261 N.C. App. 235, 241, 820 S.E.2d 331, 335 (2018) (citation omitted). "Probable cause does not mean actual and positive cause nor [does it]

import absolute certainty." *State v. Johnson*, 288 N.C. App. 441, 456, 886 S.E.2d 620, 631 (2023) (citation omitted).

### 1. Reliability of Yago's Alert

First, Defendant argues Yago's alert did not establish probable cause because, since the legalization of hemp in North Carolina, a positive canine alert does not necessarily indicate the presence of illegal drugs; therefore, the alert here did not provide sufficiently reliable information that drugs were present. This argument is unsupported by the facts of this case and the jurisprudence of this State.

"[A] positive alert for drugs by a specially trained drug dog gives probable cause to search the area or item where the dog alerts." *Degraphenreed*, 261 N.C. App. at 246, 820 S.E.2d at 338 (alteration in original) (citation omitted) (concluding a canine's positive alert for illegal drugs was "sufficient to support a reasonable belief that the automobile carrie[d] contraband materials"). The legalization of hemp does not alter this well-established general principle. *See State v. Walters*, 286 N.C. App. 746, 758, 881 S.E.2d 730, 739 (2022) ("The legalization of hemp has no bearing on the continued illegality of methamphetamine, and the Fourth Amendment does not protect against the discovery of contraband, detectable by [a] drug-sniffing dog . . . ."). Moreover, "we have repeatedly applied precedent established before the legalization of hemp, even while acknowledging the difficulties in distinguishing hemp and marijuana *in situ*." *Id.* at 758, 881 S.E.2d at 739.

In this case, the State and Defendant place heavy emphasis on why our

analyses in *State v. Teague*, 286 N.C. App. 160, 179, 879 S.E.2d 881, 896 (2022), *disc. rev. denied, 891 S.E.2d 281 (N.C. 2023)* (reasoning the legalization of hemp does not alter the principle that the smell of marijuana is sufficient to show probable cause), and *Johnson*, 288 N.C. App. at 457–58, 886 S.E.2d at 632–33 (declining to reach the issue of whether the smell of marijuana alone is sufficient to give rise to probable cause for the issuance of a search warrant while acknowledging the Industrial Hemp Act does not modify the State's burden of proof), do or do not apply to the facts of this case. Neither party cited to *Walters*, which we conclude is dispositive. *See Walters*, 286 N.C. App. at 758, 881 S.E.2d at 739 (concluding the defendant's argument that the legalization of hemp altered a canine's reliability was "simply not presented by the facts of [the] case, where . . . methamphetamine and hemp were in the same bag, and the canine was trained to detect both substances").

Here, when Presson conducted the traffic stop of Defendant, he believed, based on the C.I.'s information, that Defendant may have had heroin in his vehicle. Neither Presson nor any of the responding officers smelled marijuana on Defendant nor had any suspicions he may have had marijuana. After Yago alerted to the presence of narcotics, Presson and Robillard discovered heroin in Defendant's vehicle, not marijuana or hemp. Not only has our case law made it clear the legalization of hemp has no bearing on our Fourth Amendment jurisprudence, but the argument also does not comport with the facts of this case. *See Teague*, 286 N.C. App. at 179, 879 S.E.2d at 896 ("Assuming, *arguendo*, hemp and marijuana smell 'identical,' then the

presence of hemp does not make all police probable cause searches based on the odor unreasonable.") (citation omitted); *see also Johnson*, 288 N.C. App. at 457–58, 886 S.E.2d at 632 ("The smell of marijuana 'alone . . . supports a determination of probable cause, even if some use of industrial hemp products is legal under North Carolina law. This is because *only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.*'") (citation omitted).

The principle that the legalization of hemp has no bearing on our Fourth Amendment jurisprudence is even more clear in this case than it was in *Walters*, where officers discovered both illegal methamphetamine and legal hemp. In this case, there was no marijuana or hemp discovered on Defendant's person, nor did officers have any suspicions that it would be.

Accordingly, Yago's alert was reliable and gave law enforcement officers the required probable cause to search Defendant's vehicle for illegal contraband. *See Degraphenreed*, 261 N.C. App. at 246, 820 S.E.2d at 338.

## 2. Certification of Yago

Second, Defendant argues Yago's alert was unreliable because there was insufficient evidence of Yago's training, experience, and certifications. This argument, however, was not preserved for our review. In his reply brief, Defendant asserts that this issue was preserved because he "vigorously" pursued this line of questioning at the hearing when he asked Robillard extensive questions about Yago's training and certification. Despite Defendant's argument, questioning witnesses is

insufficient to comply with our preservation rules.

"In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make . . . ." N.C.R. App. 10(a)(1). "This Court has long held that where a theory argued on appeal was not raised before the trial court, 'the law does not permit parties to swap horses between courts in order to get a better mount . . . .'" *State v. Sharpe*, 344 N.C. 190, 194, 473 S.E.2d 3, 5 (1996) (citation omitted).

Defendant did not argue to the trial court that Yago's alert was unreliable because of her certification and training. He did not raise this argument in his written Motion to Suppress nor did he raise it in front of the trial court at the hearing. While the suppression order details Yago's training, the order specifically notes that Defendant did not challenge "any aspect of Yago's training[.]" Moreover, Defendant challenges the use of the term "bona fide" organization as insufficient to establish Yago's credentials; however, Defendant did not object to any of the State's questioning or Robillard's testimony that Yago was certified by a "bonda fide" organization.

Accordingly, this issue was not preserved, and we decline to reach it on the merits. *See Sharpe*, 344 N.C. at 194, 473 S.E.2d at 5.

### 3. Identity of the Confidential Informant

Third, Defendant argues it would be a violation of his due process rights if this Court considered the C.I.'s information in its probable cause analysis because

Defendant did not have the information he needed to attack the credibility of the C.I. evidence. Further, the same standard applied to motions to compel a C.I.'s identity cannot be applied to whether the C.I.'s identity should be released for purposes of the motion to suppress. Given that Yago's alert alone was sufficient to establish probable cause, however, we do not need to reach this argument.

## B. Possession as a Lesser Included Offense

Finally, Defendant argues the trial court erred in sentencing him for possession of heroin and trafficking in heroin when possession is a lesser included offense of trafficking. This argument is likewise unsupported by the facts of this case and our Supreme Court's jurisprudence.

Defendant was sentenced for trafficking in heroin *by* transportation and possession, not trafficking *and* possession. Moreover, "possessing, manufacturing, and transporting heroin are separate and distinct offenses[,]" and a defendant may be "convicted and punished separately" for trafficking in heroin by possession and trafficking in heroin by transporting "even when the contraband material in each separate offense is the same . . . ." *State v. Perry*, 316 N.C. 87, 103–04, 340 S.E.2d 450, 461 (1986). While Defendant seemingly challenges the validity of this holding, it is not our prerogative to ignore Supreme Court precedent. We further decline Defendant's "challenge" to devise a hypothetical where a defendant transports drugs without possessing drugs.

The trial court, therefore, did not err in sentencing Defendant for each count.

## IV. <u>Conclusion</u>

We conclude the trial court did not err in denying Defendant's Motion to Suppress because Yago's alert established the prerequisite probable cause to conduct the search. We further conclude the trial court did not err in sentencing Defendant for trafficking in heroin by transportation and trafficking in heroin by possession.

NO ERROR.

Judges WOOD and STADING concur.