IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-796

No. COA22-291

Filed 6 December 2022

Watauga County, No. 20CRS51032

STATE OF NORTH CAROLINA

v.

ROBERT MACDONALD WALTERS, Defendant.

Appeal by defendant from judgment entered 27 October 2021 by Judge R. Gregory Horne in Superior Court, Watauga County. Heard in the Court of Appeals 1 November 2022.

*Attorney General Joshua H. Stein, by Assistant Attorney General Phyllis A. Turner, for the State.*

*Assistant Public Defender Max E. Ashworth, III, for defendant-appellant.*

STROUD, Chief Judge.

¶ 1 Defendant appeals from a judgment entered upon a jury verdict finding him guilty of possession of methamphetamine. Defendant argues evidence regarding the methamphetamine was inadmissible because the police did not have probable cause to search his vehicle due to recent changes in North Carolina law involving marijuana and industrial hemp. Because Defendant had no legitimate expectation of privacy in the bag where he stored both his hemp and methamphetamine, and Defendant's bag

was not protected by the federal Constitution or this State's Constitution, we affirm the trial court's denial of Defendant's motion to suppress.

## I.   Background

¶ 2        Defendant contends the trial court erred by denying his motion to suppress evidence found during a search of his vehicle.  Defendant and the State agreed, on the record, upon the factual basis for purposes of deciding the motion to suppress. They agreed the trial court should consider an affidavit by Defendant's counsel in support of the motion to suppress and a "SYNOPSIS" written by the responding deputy on the night of Defendant's arrest, which was attached to Defendant's counsel's affidavit as an exhibit.  Defendant and the State did not formally introduce any additional evidence when the motion was heard before trial on 26 October 2021.

¶ 3        The synopsis indicates on 16 October 2020 Watauga County Sheriff's Deputy Brian Lyall was driving and on duty when he "noticed a black Dodge diesel truck" at an intersection.  Deputy Lyall recognized the driver as Defendant; Deputy Lyall also had information from another deputy, Deputy Norris, that Deputy Norris had "seized suspected Methamphetamine off of [Defendant] in the recent past."  Deputy Norris had also taken out felony possession warrants on Defendant, which were still

outstanding.[1]  Deputy Lyall turned around to follow the truck and saw "a black in color Dodge sitting in the parking lot of" a car dealership.  Deputy Lyall then turned on his lights and "initiate[d] a traffic stop."

¶ 4        Here, Defendant's counsel's affidavit and Deputy Lyall's synopsis differ on some details of the exact sequence of events.  According to Deputy Lyall's synopsis, he asked for Defendant's driver's license, radioed dispatch, and confirmed Defendant still had an "outstanding warrant for his arrest."  Defendant's counsel's affidavit states, based upon his review of the body-cam video of the event, that "Upon arriving at the Dodge Ram, Dep. Lyall opened the driver's side door of the Dodge Ram and ordered Defendant to exit the vehicle. . . . Defendant complied with Dep. Lyall's request and immediately exited the Dodge Ram."  The affidavit continues, "[u]pon exiting the Dodge Ram, Dep. Lyall immediately placed the Defendant under arrest and handcuffed the Defendant."  The affidavit notes, "[d]espite what is noted in Exhibit 'A,' [the synopsis,] Dep. Lyall did not ask Defendant for license, registration, or any other documentation prior to placing him under arrest."  There was no further explanation of the discrepancy between the events contained in the body-cam video as asserted in Defendant's counsel's affidavit and Deputy Lyall's synopsis.

---

[1]  The outstanding warrants that were the original cause for Defendant's arrest were not included in the Record on Appeal, but Defendant does not dispute that he was arrested upon the outstanding warrants.

¶ 5    Deputy Lyall called "Canine Handler Watson to the scene," arrested Defendant, searched him, placed him in handcuffs behind his back, and put him in Deputy Lyall's patrol car.  The affidavit states Deputy Lyall "retrieved the Defendant's cell phone so that Defendant could make arrangements for the Dodge Ram[,]" but the synopsis does not.  The affidavit also states that, due to Defendant's discomfort and difficulty with having his hands handcuffed behind his back, Deputy Lyall allowed Defendant to exit the patrol car and Deputy Lyall moved Defendant's handcuffs to the front of Defendant's body.  While Deputy Lyall was moving Defendant's handcuffs, or shortly thereafter, Deputy Watson arrived.  Deputy Lyall then placed Defendant back in the patrol car.

¶ 6    The affidavit indicates Deputy Lyall asked Deputy Watson to "run his dog" around Defendant's truck after Deputy Lyall placed Defendant back in the patrol car. The synopsis does not indicate Deputy Lyall asked Deputy Watson to run his dog around the truck, but only states that after Deputy Lyall placed Defendant in the patrol car "Deputy Watson advised [Deputy Lyall] that his Canine indicated on the vehicle."[2]  Deputy Lyall searched the truck and "under the [driver's side] seat [Deputy Lyall] located a black [C]rown [R]oyal bag.  Inside the bag was a bag of Marijuana, a

---

[2] Deputy Watson confirmed during the State's presentation of evidence that the "dog is certified in cocaine, heroin, meth[amphetamine], and marijuana."  The dog is annually recertified to detect these substances.  Defendant did not object to Deputy Watson's testimony.

Marijuana smoking device, a plastic tube of Marijuana and a plastic bag containing a white crystal like substance." Deputy Watson stayed behind to coordinate the towing of the truck while Deputy Lyall took Defendant to a magistrate's office where he was served the "outstanding warrant for possession of Methamphetamine." Defendant was later indicted for possession of methamphetamine, possession of marijuana paraphernalia, and simple possession of marijuana, a Schedule VI controlled substance, based on the search on 16 October 2020. "The suspected Methamphetamine" from 16 October 2020 was "sent to the Western Regional Laboratory" for testing. The State presented expert testimony at trial identifying the substance as methamphetamine. The record is unclear on the timing, but at some point prior to trial the "Marijuana" located during the search of Defendant's truck was identified as hemp. The State voluntarily dismissed the charges for possession of marijuana paraphernalia and possession of marijuana on 28 October 2021.

¶ 7 Defendant filed a pretrial motion to suppress "any and all evidence or potential evidence seized following an illegal search of [his] motor vehicle" on 16 October 2021. This motion was heard 26 October 2021, on the first day of Defendant's trial, after jury selection but before the State began presenting evidence. After hearing counsels' arguments on the motion, the trial court reconciled the differences between the synopsis and affidavit and made oral findings of fact:

The Court would find that Deputy Brian Lyall of

Watauga County Sheriff's department was on patrol. And to be clear, I'm also relying upon the attached affidavit and the synopsis from Deputy Brian Lyall that's included in the stipulation; . . .

. . .

THE COURT: On the 16th day of October 2020, that Deputy Lyall was operating his patrol car on 421 South in Boone, east side of Boone. That at the intersection of 421 South and Old 421 South, he observed a Dodge diesel pickup truck and observed [Defendant] to be the operator of that vehicle. That based upon Deputy Lyall's previous information, he knew that there was an outstanding order for arrest with regard to the driver, [Defendant]. Accordingly, he followed the vehicle and ended up finding the vehicle stopped in the PVA of the Chevrolet dealership on the east side of Boone. That upon seeing the vehicle he pulled up, activated his blue lights and initiated a formal stop of the vehicle.

He approached the vehicle, found [Defendant] to be the operator. That through communication with his dispatch, and verified that there was an outstanding order for arrest for [Defendant]. That he approached the vehicle, directed [Defendant] to exit the vehicle, and placed him in custody pursuant to the order for arrest. That he placed [Defendant] in his patrol vehicle. That he then at the request of [Defendant], approached the Dodge Pickup truck to retrieve [Defendant's] cell phone so that he could make provision for disposition or care for the truck. That when Deputy Lyall returned with the cell phone, he noted that [Defendant] was uncomfortable, having been handcuffed with his hands behind his back; that he was fidgeting and was in an uncomfortable position. That Deputy Lyall then allowed [Defendant] to step from the vehicle and unlocked his handcuffs from behind [Defendant] and secured the handcuffs so [Defendant's] hands were in front to relieve the discomfort. That is shown on the video.

> Deputy Watson pulled onto the scene at this time. That at this point, [Defendant] was in custody pursuant to the order for arrest. That Officer Watson was a K9 handler and had a K9 officer. . . . And that after placing [Defendant] back into his patrol car after adjusting his handcuffs, Deputy Lyall requested Deputy Watson to run his dog around the Dodge Ram. That Deputy Watson did that and that the K9 alerted as to the vehicle. And subsequent to that, the interior portion of the vehicle was searched, resulting in the discovery and seizure of contraband that is underlying the charge presently before the court.

The trial court then discussed case law argued by Defendant and the State, after which the trial court concluded:

> That the parties having stipulated to the affidavit and attached arrest report, the Court has made the above findings of fact. The Court, therefore, would conclude that [Defendant] was in custody. It's separate and apart from his arrest, yet contemporaneous with that, Deputy Watson walked the trained K9 around the exterior portion of the vehicle and the dog alerted.

> The Court would conclude that the dog's alert constituted probable cause, and therefore, there was a basis separate and apart from the arrest to search the interior of the vehicle. That the subsequent search found whatever the subsequent evidence shows. Therefore, the Court would find and conclude that walking the K9 around the vehicle did not delay the ongoing arrest at the scene. That there was probable cause to support that walking the K9 around did not constitute a search of the vehicle. That the subsequent alert created probable cause for a search of the interior of the vehicle, and any items seized as a result were lawfully, subsequent search was lawful and any items seized were lawfully obtained.

The trial court then disposed of other pretrial motions, and the State presented

evidence.

¶ 8    During the State's presentation of evidence, Defendant objected to Deputy Watson's testimony on the search of his truck generally and to Deputy Watson's testimony regarding the "Crown Royal bag with a container with a leafy green substance . . . ." Defendant did not object after either Deputy Watson or Deputy Lyall testified about the "white crystal substance" found in Defendant's truck. Defendant was ultimately convicted by a jury of possession of methamphetamine; the trial court entered a judgment on or about 27 October 2021. Defendant gave notice of appeal in open court.

## II.    Standard of Review

¶ 9    Defendant acknowledges he did not object when the State introduced Deputy Watson and Deputy Lyall's testimony regarding the "white crystal substance" found in the truck or the State Crime Lab forensic scientist's testimony that the substance found in Defendant's truck was identified as methamphetamine. Therefore, the issue of whether the trial court erred in denying his motion to suppress is unpreserved and ordinarily would be precluded from appellate review. *See State v. Grice*, 367 N.C. 753, 764, 767 S.E.2d 312, 320 (2015). But,

> [i]n criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly

contended to amount to plain error.

N.C. R. App. P. 10(a)(4); *see also State v. Goss*, 361 N.C. 610, 622, 651 S.E.2d 867, 875 (2007), *cert. denied*, 555 U.S. 835, 172 L.Ed.2d 58 (2008). Here, Defendant "specifically and distinctly contend[s]," N.C. R. App. P. 10(a)(4), "[t]he trial court committed plain error when it denied [Defendant's] motion to suppress . . . ." (Emphasis removed.)

¶ 10     We therefore review Defendant's appeal for plain error.

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. *See* [*State v.*] *Odom*, 307 N.C. [655, ] 660, 300 S.E.2d [375, ] 378 [1983]. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error "had a probable impact on the jury's finding that the defendant was guilty." *See id.* (citations and quotation marks omitted); *see also Walker*, 316 N.C. at 39, 340 S.E.2d at 83 (stating "that absent the error the jury probably would have reached a different verdict" and concluding that although the evidentiary error affected a fundamental right, viewed in light of the entire record, the error was not plain error). Moreover, because plain error is to be "applied cautiously and only in the exceptional case," *Odom*, 307 N.C. at 660, 300 S.E.2d at 378, the error will often be one that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings," *Odom*, 307 N.C. at 660, 300 S.E.2d at 378 (quoting *McCaskill*, 676 F.2d at 1002).

*State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012). Defendant "bear[s] the heavier burden of showing that the error rises to the level of plain error." *Id.* at 516, 723 S.E.2d at 333.

> "In conducting our review for plain error, we must first determine whether the trial court did, in fact, err in denying Defendant's motion to suppress." *State v. Powell*, 253 N.C. App. 590, 594–95, 800 S.E.2d 745, 748-49 (2017) (noting that, in a plain error analysis regarding the denial of a motion to suppress, we apply the normal standard of review to determine whether error occurred).
>
> "The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." *State v. Jackson*, 368 N.C. 75, 78, 772 S.E.2d 847, 849 (2015). "Competent evidence is evidence that a reasonable mind might accept as adequate to support the finding." *State v. Ashworth*, 248 N.C. App. 649, 651, 790 S.E.2d 173, 176, *disc. rev. denied*, 369 N.C. 190, 793 S.E.2d 694 (2016).

*State v. Newborn*, 279 N.C. App. 42, 2021-NCCOA-426, ¶¶ 23-24. If the trial court erred, we then determine whether that error "had a probable impact on the jury's finding that the defendant was guilty." *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334 (quoting *Odom*, 307 N.C. at 660, 300 S.E.2d at 378).

### III. Analysis

Defendant presents and argues a single issue on appeal: "Whether law enforcement officers need probable cause to use a drug-detection dog to sniff a vehicle for narcotics when the dog is unable to distinguish between contraband and noncontraband." Because Defendant did not have a legitimate expectation of privacy in the bag where he stored his methamphetamine, which could be detected by the drug-sniffing dog used by the police, the trial court did not err by denying Defendant's

motion to suppress. We affirm.

¶ 12        Defendant did not challenge any of the trial court's findings of fact.[3] Instead, his arguments focus on the trial court's conclusion the officers had probable cause to search his truck and whether the dog sniff also constituted a search. The question on appeal is therefore whether the trial court erred in determining the use of a drug-sniffing dog and subsequent search of Defendant's truck was lawful. If the trial court did err, we must then consider whether this error was so fundamental in that "after examination of the entire record, the error 'had a probable impact on the jury's finding that the defendant was guilty.'" *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334 (quoting *Odom*, 307 N.C. at 660, 300 S.E.2d at 378). Thus, we first focus our analysis on whether the deputies were constitutionally permitted to search Defendant's vehicle and whether the deputies lawfully used the drug-sniffing dog.

¶ 13        Defendant argues the trial court erred by denying his motion to suppress because the deputies made a warrantless search of his vehicle without probable cause

---

[3] As a preliminary matter, we note the trial court did not reduce its ruling on Defendant's motion to writing, and only made oral findings of fact and conclusions of law at Defendant's trial. As to a motion to suppress, "[t]he judge must set forth in the record his findings of fact and conclusions of law." N.C. Gen. Stat. § 15A-977(f) (2021). "A written determination setting forth the findings and conclusions is not necessary, but it is the better practice." *State v. Bartlett*, 368 N.C. 309, 312, 776 S.E.2d 672, 674 (2015) (citing *State v. Oates*, 366 N.C. 264, 268, 732 S.E.2d 571, 574 (2012)). Here, the trial court resolved any issues of fact in its oral findings of fact, and we can address Defendant's arguments based upon the trial court's oral findings of fact and conclusions of law. "Thus, our cases require findings of fact only when there is a material conflict in the evidence and allow the trial court to make these findings either orally or in writing." *Id.*

when Deputy Watson ran his dog around the truck. Defendant does not argue, if the dog sniff is not a search, whether the dog sniff could assist in establishing probable cause for the subsequent search of his truck by Deputies Lyall and Watson. Defendant argues the dog sniff was a search because recent changes in North Carolina law–namely passage of the Industrial Hemp Act in 2015 legalizing the production, possession, and consumption of hemp–now renders drug-detecting dogs unable to differentiate between contraband and noncontraband items. Because the dogs signal to THC, which is present in both marijuana and hemp, and because Defendant now has a legitimate privacy interest in hemp, Defendant argues the use of drug-detecting dogs in this context "runs afoul of the holding in" *Illinois v. Caballes*, 543 U.S. 405, 160 L.Ed.2d 842 (2005). Defendant argues the use of the dog is now a search, the deputies had no probable cause to search his truck, none of the exceptions to the warrant requirement for a search apply, the evidence of the methamphetamine should have been suppressed, and the trial court erred in denying his motion to suppress. Because Defendant does not challenge any of the trial court's findings of fact, we interpret these arguments to address the trial court's conclusion "there was probable cause to support that walking the K9 around did not constitute a search of the vehicle."

¶ 14        The State conversely argues "[t]he trial court properly denied Defendant's motion to suppress based on well-settled law in North Carolina[,]" specifically that

"[t]he trial court relied on *State v. Branch*, 177 N.C. App. 104, 627 S.E.2d 506 (2006) and *Illinois v. Caballes*[,] 543 U.S. 405, 125 S.CT. 834, 160 L. Ed. 842 (2005)." The State argues these cases determine Defendant could not have had a privacy interest in any contraband he possessed, and since the dog sniff revealed the location of a substance Defendant had no right to possess, *Caballes* and *Branch* establish that the dog sniff did not violate the Fourth Amendment. Defendant's arguments require us to begin with the basics of the constitutional protections afforded criminal defendants from unreasonable searches and seizures.

## A. Search and Seizure

"The Fourth Amendment to the United States Constitution protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]'" *State v. Teague*, 2022-NCCOA-600, ¶ 26 (quoting U.S. Const. amend. IV). "'The North Carolina Constitution affords similar protection.'" *Id.* (quoting *State v. Cabbagestalk*, 266 N.C. App. 106, 111, 830 S.E.2d 5, 9 (2019)) (citing N.C. Const. art. 1, § 20). Defendant contends (1) following the legalization of industrial hemp in North Carolina a dog sniff is a search, and (2) this particular dog sniff was an "unreasonable" search from which he was protected by the federal and State Constitutions.

### 1. *What is a Fourth Amendment "Search"*

This Court has previously addressed what constitutes a Fourth Amendment

"search" and the implications of using drug-sniffing dogs to seek contraband in *State*

*v. Washburn*:

> The first clause of the Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[T]he touchstone of the Fourth Amendment analysis has been whether a person has a constitutionally protected reasonable expectation of privacy." *State v. Phillips,* 132 N.C.App. 765, 770, 513 S.E.2d 568, 572 (internal quotation marks omitted), *disc. review denied and appeal dismissed,* 350 N.C. 846, 539 S.E.2d 3 (1999). Such an unreasonable search "occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85, 94 (1984).
>
> Official conduct that does not compromise any legitimate interest in privacy is not a search subject to the Fourth Amendment. *Id.* at 123, 104 S.Ct. 1652, 80 L.Ed.2d at 101. Any interest in possessing contraband cannot be deemed legitimate, and thus, governmental conduct that only reveals the possession of contraband does not compromise any legitimate privacy interest. *Id.* at 121–23, 104 S.Ct. 1652, 80 L.Ed.2d at 99–101.
>
> The United States Supreme Court discussed the Fourth Amendment implications of a canine sniff in *United States v. Place.* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). There, the Court treated the sniff of a well-trained narcotics dog as *sui generis* because the sniff "disclose[d] only the presence or absence of narcotics, a contraband item." *Id.* at 707, 103 S.Ct. 2637, 77 L.Ed.2d at 121. As the United States Supreme Court explained in *Illinois v. Caballes*, since there is no legitimate interest in possessing contraband, a police officer's use of a well-trained narcotics dog that reveals only the possession of narcotics does not

> compromise any legitimate privacy interest and does not
> violate the Fourth Amendment. 543 U.S. 405, 408–09, 125
> S.Ct. 834, 160 L.Ed.2d 842, 847 (2005).

*State v. Washburn*, 201 N.C. App. 93, 96-97, 685 S.E.2d 555, 558 (2009). Because a dog sniff was not a search, at least prior to the legalization of industrial hemp in North Carolina, "probable cause was not a prerequisite for" the use of a dog to detect contraband. *See id.* at 99, 685 S.E.2d at 560; *see also Branch*, 177 N.C. App. at 108, 627 S.E.2d at 509 ("[O]nce the lawfulness of a person's detention is established, *Caballes* instructs us that officers need no additional assessment under the Fourth Amendment before walking a drug-sniffing dog around the exterior of that individual's vehicle."). As a result, the police were generally free to use drug-sniffing dogs during traffic stops to detect contraband without implicating the Fourth Amendment. *Compare Rodriguez v. U.S.*, 575 U.S. 348, 350, 191 L. Ed. 2d 492, 496 (2015) (expanding upon *Caballes* and holding "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures. A seizure justified only by a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation.").

¶ 17 Defendant contends the United States Supreme Court and North Carolina appellate court cases "must now be re-examined due to industrial hemp's legalization." Defendant notes that previously "the United States Supreme Court

and this Court held using a drug-detection dog to walk around a vehicle's exterior to sniff for narcotics is not a search. *City of Indianapolis v. Edmond*, 531 U.S. 32, 40, 121 S. Ct. 447, 453; *State v. Fisher*, 141 N.C. App. 448, 457, 539 S.E.2d 677, 684." But given the legalization of hemp, Defendant argues that, because a drug-sniffing dog may now alert to noncontraband, the underlying rationale in *Caballes* now requires probable cause to use a drug-sniffing dog because the dog can alert to noncontraband.

¶ 18        As discussed above, the Supreme Court of the United States explained the Fourth Amendment implications of dog sniffs in *Caballes*. *See Caballes*, 543 U.S. 405, 160 L.Ed.2d 842. In *Caballes*, the defendant was stopped for speeding on the highway. *Id.* at 406, 160 L.Ed.2d at 845. A K-9 unit overheard the responding officer call dispatch to report the stop and also responded to the scene. *Id.* at 406, 160 L.Ed.2d at 845-46. When the K-9 unit arrived, the K-9 officer walked the dog around the defendant's vehicle while the responding officer wrote the defendant a citation. *Id.* The dog alerted; based on the alert the officers searched the trunk of the defendant's vehicle; the officers found marijuana; and then the officers arrested the defendant. *Id.*

¶ 19        The United States Supreme Court held

> [o]fficial conduct that *does not "compromise any legitimate interest in privacy" is not a search subject to the Fourth Amendment. Jacobsen*, 466 US, at 123, 80 L Ed 2d 85, 104 S Ct 1652. We have held that any interest in possessing contraband cannot be deemed "legitimate," and thus,

> governmental conduct that *only* reveals the possession of
> contraband "compromises no legitimate privacy interest."
> *Ibid.* This is because the expectation "that certain facts
> will not come to the attention of the authorities" is not the
> same as an interest in "privacy that society is prepared to
> consider reasonable." *Id.*, at 122, 80 L Ed 2d 85, 104 S Ct
> 1652 (punctuation omitted). In *United States v. Place*, 462
> US 696, 77 L Ed 2d 110, 103 S Ct 2637 (1983), we treated
> a canine sniff by a well-trained narcotics-detection dog as
> "*sui generis*" because "it discloses only the presence or
> absence of narcotics, a contraband item." *Id.*, at 707, 77 L
> Ed 2d 110, 103 S Ct 2637; see also *Indianapolis v. Edmond*,
> 531 US 32, 40, 148 L Ed 2d 333, 121 S Ct 447 (2000).

*Id.* at 408-09, 160 L.Ed.2d at 847 (emphasis added). The Supreme Court further held

"the use of a well-trained narcotics-detecting dog–one that 'does not expose

noncontraband items that otherwise would remain hidden from public view,' *Place*,

462 US, at 707, 77 L Ed 2d 110, 103 S Ct 2637–during a lawful traffic stop, generally

does not implicate legitimate privacy interests." *Id.* at 409, 160 L.Ed.2d at 847. The

Supreme Court noted this holding was consistent with recent precedent addressing

searches that could detect both lawful and unlawful activity:

> The legitimate expectation that information about
> perfectly lawful activity will remain private is categorically
> distinguishable from respondent's hopes or expectations
> concerning the nondetection of contraband in the trunk of
> his car. A dog sniff conducted during a concededly lawful
> traffic stop that reveals no information *other than the
> location of a substance that no individual has any right to
> possess does not violate the Fourth Amendment.*

*Id.* at 409-10, 160 L.Ed.2d at 847-48 (emphasis added).

¶ 20        Here, Defendant did not have a "legitimate privacy interest" in his methamphetamine. The drug-sniffing dog was trained and certified to alert on methamphetamine, and Defendant did not create a "legitimate privacy interest" as to the methamphetamine simply by storing it in the same bag with the hemp. *See id.* at 408, 160 L.Ed.2d at 847 ("We have held that any interest in possessing contraband cannot be deemed 'legitimate[.]'"). Deputy Watson confirmed during the State's presentation of evidence that the "dog is certified in cocaine, heroin, meth[amphetamine], and marijuana." The dog was annually re-certified to detect these substances. The dog was trained to alert to the methamphetamine even in the absence of hemp. Thus, Defendant's argument that *Caballes* "must be re-examined due to industrial hemp's legalization" is simply not presented by the facts of this case, where the methamphetamine and hemp were in the same bag, and the canine was trained to detect both substances.

¶ 21        The legalization of hemp has no bearing on the continued illegality of methamphetamine, and the Fourth Amendment does not protect against the discovery of contraband, detectable by the drug-sniffing dog, because Defendant decided to package noncontraband beside it. Additionally, we have repeatedly applied precedent established before the legalization of hemp, even while acknowledging the difficulties in distinguishing hemp and marijuana *in situ*. *See Teague*, ¶ 58 (finding decisions of the federal courts of North Carolina persuasive and

deciding "[t]he passage of the Industrial Hemp Act, in and of itself, did not modify the State's burden of proof at the various stages of our criminal proceedings"); *State v. Highsmith*, 2022-NCCOA-560, ¶¶ 16-20 (determining the difficulties in distinguishing hemp and marijuana did not alter the traditional probable cause analysis, and the scent of marijuana or hemp in addition to other facts may grant an officer probable cause to search for or seize suspected contraband); *State v. Parker*, 277 N.C. App. 531, 2021-NCCOA-217, ¶¶ 13, 31 (noting the defendant argued the trial court erred in denying his motion to suppress by "failing to address the material issue of the indistinguishable scents of marijuana and legal hemp[,]" this Court held "we need not determine whether the scent or visual identification of marijuana alone remains sufficient to grant an officer probable cause to search a vehicle" because the police had additional facts available to them, other than the scent of marijuana or hemp, sufficient to grant the police probable cause).

We need not re-examine the application of the Supreme Court's holding in *Caballes* to a canine sniff based on the facts of this case. Defendant had no legitimate expectation of privacy in his contraband simply because it was stored together with non-contraband in his vehicle, the dog-sniff could detect the methamphetamine regardless of the presence of hemp, and the dog-sniff of Defendant's truck did not constitute a search.

## B. Probable Cause

¶ 23        Next, we address the trial court's conclusion that the dog's "alert created probable cause for a search of the interior of [Defendant's] vehicle." We have, so far, only determined that the use of the drug-sniffing dog did not constitute a search prohibited by the Fourth Amendment. We must still determine whether the police had probable cause for the subsequent search of Defendant's vehicle.

¶ 24        This Court recently published an opinion in *Highsmith* where the defendant made a similar argument. *See Highsmith*, ¶ 10. In *Highsmith*, the police received multiple complaints of a house being used to sell narcotics. *Id.* ¶ 4. Two officers followed a vehicle after it left the residence, then pulled the vehicle over after noticing it "had a broken brake light" and it "illegally cross[ed] a yellow line." *Id.* The defendant "was sitting in the vehicle's front passenger seat." *Id.* ¶ 5. The police recognized the defendant from "past encounters and arrests," noticed ammunition in a rear passenger seat, and the defendant and the driver of the vehicle "gave inconsistent stories about where they were headed and from where they were coming." *Id.* ¶¶ 5-6. The police called a K-9 unit, and after the K-9 unit arrived the dog "sniffed the exterior of the vehicle and alerted to the possible presence of drugs." *Id.* ¶ 7. The defendant was removed from the vehicle; the police searched the vehicle; and the officers found evidence of marijuana and paraphernalia for the sale of marijuana. *Id.* ¶ 7. The defendant was indicted and filed a motion to suppress. *Id.*

¶¶ 9-10.    The defendant and the State in *Highsmith* made similar arguments to

Defendant and the State in this case:

> Defendant filed a motion to suppress, challenging the
> lawfulness of the search and subsequent seizure of the
> marijuana. Defendant premised his argument on the
> emerging industry of legal hemp, indistinguishable by
> either sight or smell from marijuana. Defendant argued at
> the hearing that a K-9 alert standing alone cannot support
> probable cause when legalized hemp is widely available.
> Because marijuana and hemp are indistinguishable,
> Defendant argued, an unlawful seizure would first be
> needed in order to perform testing to confirm the substance
> was marijuana. The K-9 alert therefore could not support
> the warrantless search, and the ensuing evidence
> recovered should be suppressed, as the result of both an
> illegal search and an illegal seizure following the search.
>
> The State argued the existence of legal hemp does not
> change the analysis that a K-9 alert can support probable
> cause. The prosecutor explained that because the K-9 alert
> was not the only factor giving rise to the officers' probable
> cause to believe Defendant was engaged in criminal
> activity, this is "a K-9 sniff *plus*" case. (Emphasis added).
> Other factors cited by the prosecutor were the inconsistent
> statements made to officers by Defendant and the driver of
> the vehicle, the fact that neither the driver nor Defendant
> was the registered owner of the vehicle, and *the officers'*
> *knowledge of Defendant's prior arrests related to*
> *marijuana.*
>
> The trial court denied Defendant's motion to suppress by
> order entered 8 February 2021. The trial court concluded
> that "K-9 Mindy's positive alert for narcotics at the SUV,
> along with other factors in evidence, provided the officers
> on the scene with sufficient facts to find probable cause to
> conduct a warrantless search of the inside of the vehicle."

*Id.* ¶¶ 10-12 (emphasis added).

On appeal, the defendant in *Highsmith* narrowed his argument compared to the Defendant in the present case. The defendant did "not argue on appeal that the search of the vehicle was unconstitutional. Instead, he argue[d] the trial court failed to make adequate findings of fact and conclusions of law regarding the *seizure* of the marijuana found during the search, given the difficulty of distinguishing legal hemp from illegal marijuana." *Id.* ¶ 16 (emphasis in original). This Court engaged in the traditional totality of the circumstances test to determine whether the police had probable cause to conduct a warrantless search and seizure of the marijuana:

> The Fourth Amendment to the United States Constitution and Article I, Section 20 of the North Carolina Constitution prohibit unreasonable searches and seizures and apply to "brief investigatory detentions such as those involved in the stopping of a vehicle." *State v. Downing*, 169 N.C. App. 790, 794, 613 S.E.2d 35, 38 (2005) (citation and quotation marks omitted). However, "[i]t is a well-established rule that a search warrant is not required before a lawful search based on probable cause of a motor vehicle in a public roadway . . . may take place." *Id.* at 795-96, 613 S.E.2d at 39. This probable cause standard is met where the totality of "the facts and circumstances within the officers' knowledge and of which they had reasonable trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *State v. Zuniga*, 312 N.C. 251, 261, 322 S.E.2d 140, 146 (1984) (brackets and quotation marks omitted)[.]
>
> . . . .
>
> The trial court found that the officer's search revealed not only marijuana, but also additional items including a

> digital scale, over one thousand dollars in folds of money, ammunition, and a flip cellphone. Under the totality of the circumstances: a vacuum-sealed bag of what appeared to be marijuana, hidden under the seat and found with these items, without any evidence that Defendant claimed to the officers the substance was legal hemp, the officers' suspicions were bolstered, amounting to probable cause to believe the substance at issue was in fact illicit marijuana and not hemp. The trial court therefore did not err in concluding that Defendant's Fourth Amendment rights were not violated.

*Id.* ¶¶ 17, 20. This Court then concluded "the trial court did not err in denying Defendant's motion to suppress . . . ." *Id.* ¶ 25. However, *Highsmith* does not answer the question on appeal; the defendant in *Highsmith* specifically did not challenge the legality of the search of his vehicle. *See id.* ¶ 16. But *Highsmith* does instruct us that, although the law regarding marijuana and hemp has recently changed, we still follow a traditional probable cause analysis in determining whether a defendant's Fourth Amendment rights have been violated by a warrantless search or seizure. *See* U.S. Const. amend. IV, § 1; *see also* N.C. Const. art. I, § 20.

"Typically, a warrant is required to conduct a search unless a specific exception applies." *Parker*, ¶ 25 (citation omitted). Here, the only applicable warrant exception is the motor vehicle exception. *See id.* The State conceded during the suppression hearing that "the search of the vehicle was not a search incident to arrest, per se." The trial court later concluded "there was a basis separate and apart from the arrest to search the interior of the vehicle."

In the context of the motor vehicle exception,

> [a] police officer in the exercise of his duties may search an automobile without a search warrant when the existing facts and circumstances are sufficient to support a reasonable belief that the automobile carries contraband materials. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.

*Id.* ¶ 25 (quoting *State v. Degraphenreed*, 261 N.C. App. 235, 241, 820 S.E.2d 331, 336 (2018)).

¶ 27　　　　Here, the "facts and circumstances" available to Deputies Lyall and Watson established probable cause to search Defendant's truck, including the bag in which the methamphetamine and hemp were found, and the trial court did not err by so concluding. As established above, the use of Deputy Watson's K-9 did not constitute a Fourth Amendment search. But the canine's alert was a factor contributing to a probable cause determination that supports Deputies Lyall and Watson's decision to search Defendant's truck. In addition to the positive indication by the dog, Deputy Lyall was aware of (1) Defendant's outstanding warrants for possession of methamphetamine, and (2) that Deputy Norris had previously seized methamphetamine from Defendant. Defendant's outstanding warrants, the fact that Deputy Norris had already seized methamphetamine from Defendant, and the

positive drug-sniffing dog alert by a dog certified to detect methamphetamine is a sufficient basis for probable cause for Deputies Lyall and Watson to search Defendant's truck. The trial court did not err by concluding the deputies had probable cause to search the truck.

## IV. Conclusion

Because the State's use of a drug-sniffing dog did not constitute a Fourth Amendment "search" and because Deputies Lyall and Watson had probable cause to search Defendant's truck, the trial court committed no plain error in denying Defendant's motion to dismiss. We affirm the decision of the trial court.

AFFIRMED AND NO ERROR.

Judges HAMPSON and JACKSON concur.