STATE OF NORTH CAROLINA v. KENNETH RAY PHILLIPS

No. COA98-460

(Filed 6 April 1999)

1. **Search and Seizure— motion to suppress—affidavit— insufficient**

    The trial court did not err in summarily dismissing defendant's motion to suppress evidence in a narcotics prosecution where the accompanying affidavit failed to meet the mandatory requirements of N.C.G.S. § 15A-977 in that it did not have a single fact in support of the motion to suppress and did not state how defendant's constitutional rights were violated when police searched his mailbox without a warrant.

2. **Search and Seizure— motion to suppress—evidence hidden by third party—no expectation of privacy**

    The trial court did not err by denying defendant's motion to suppress drugs seized from defendant's mailbox where a companion traveling with defendant testified that he had thrown the drugs in her lap and pushed her out of the van, and that she had put the package in defendant's mailbox. Defendant lost any expectation of privacy he might have had in his property by throwing the drugs into her lap.

Appeal by defendant from judgment entered 29 May 1997 by Judge Dennis J. Winner in Mecklenburg County Superior Court. Heard in the Court of Appeals 11 January 1999.

Defendant was indicted for trafficking cocaine and for conspiring to traffic cocaine. Defendant was first tried at the 21 April 1997 Criminal Session of Superior Court of Mecklenburg County but the trial judge declared a mistrial after the jury was unable to reach a verdict. The case was tried again and defendant was found guilty of trafficking cocaine. Defendant was sentenced to a minimum of 35 months and a maximum of 42 months in prison.

The State's evidence tended to show that on 25 June 1996, Charlotte-Mecklenburg police officer Johnny L. Jennings was told by a confidential informant that a heavy set black male, approximately thirty years old with medium skin complexion would be going to 3515 Bernard Avenue, Apartment 2. The informant said that the black male would arrive at approximately 7:30 p.m., go into the residence, obtain

at least four and a half ounces of crack cocaine and then leave. The informant went on to state that after leaving, the suspect would then go to Clanton Park. Officer Jennings picked up the informant and the informant showed Officer Jennings the exact location of the apartment. Afterwards, Officer Jennings gathered the members of the Street Drug Interdiction team. At 6:30 p.m. or 7:00 p.m., Officer Jennings went to the residence in question and set up surveillance in an undercover vehicle so he could see the subject enter the apartment.

At 7:30 p.m., a tan Mazda van pulled into the parking lot of the Bernard Avenue complex. A black male, defendant, meeting the informant's description, got out of the van and went into the targeted apartment. Approximately one minute later, defendant left the residence, got into the van and traveled south on North Tryon Street. Officer Jennings could not see defendant's hands as defendant approached or left the apartment. Defendant stopped at a residence on North Church Street and picked up a young black female, later identified as LaShanda Long. The informant had said nothing about a female. The defendant continued traveling southbound on North Tryon going about forty-five in a thirty-five mile per hour zone. Officer Jennings told uniformed officers to stop the van.

Officer Keresztesi turned on her blue light and then her siren. Defendant turned into a parking lot, took his seat belt off and reached under the seat. Defendant then turned the van around and accelerated the vehicle on to North Tryon. Keresztesi followed the van but did not chase it due to department policy. Officer Elliot went back to the Bernard Avenue apartment and recognized the van. Officer Elliott turned on his blue lights and stopped the van. The female passenger was no longer in the van. Officer Elliot had defendant get out of the van and lie on his stomach on the asphalt. Officer Elliott handcuffed defendant and placed him under arrest. Officers Elliot and Keresztesi went to look for the female passenger and found her walking behind the Bernard Avenue apartments and detained her. Officer Keresztesi asked her where she put the drugs and she (Ms. Long) denied ownership of the drugs. Long then told the officers that she put the drugs in "the second mailbox from the end apartment." Officer Keresztesi ran over to the mailbox, lifted the lid to open it, and looked inside. Officer Keresztesi removed from the mailbox a plastic bag which appeared to have crack cocaine inside. Officer Jennings weighed the package; its weight including the packaging was 129 grams.

Officer Jennings searched defendant's van and found a handgun sitting in plain view in the console. Defendant gave consent to search his apartment. No drugs were found but the officers found a handgun and two pill bottles which they believed contained cocaine residue.

Long testified that she had paged defendant and asked him to pick her up and take her to the store so she could get medicine for her daughter. As they were going south on North Tryon, Long saw police cars with their blue lights on behind them. Defendant pulled into a parking lot and then went back on North Tryon heading in the opposite direction. Defendant was weaving in and out of traffic and Long asked defendant to let her out of the van. As defendant approached his apartment, defendant threw the drugs on Long's lap. Defendant pushed her out of the van and told her to put the "stuff in my [his] house [apartment]." When Ms. Long arrived at defendant's apartment, defendant's door was locked so she put the package in defendant's mailbox. Long was charged with three counts of trafficking in cocaine. Her case was dismissed prior to defendant's trial.

Defendant presented evidence at trial that showed that defendant was renting the apartment in question and that a female named Trina, defendant's girlfriend, was also living there. Defendant testified that in May 1996, defendant spoke to his landlord, Eric Lowery, about changing the locks on his apartment because defendant thought someone was coming in the apartment during the day. Defendant testified that on the day in question, defendant went to the car wash in the mini-van owned by Tony Miller. As he was washing the van, some men approached him. Defendant had previously had trouble with the men. Later, defendant was driving Ms. Long to the store when he saw the same men in a blue Sierra following him. Defendant testified he turned into a parking lot and started heading back toward his apartment. Defendant stated he never saw any blue lights. Defendant testified that he wanted to get back to his apartment to drop off Ms. Long so she would not be hurt. Defendant stated that the first time he saw a police car was at his apartment. He got out of the van and was arrested.

On 5 March 1997, defendant moved to suppress evidence and statements made by defendant alleging that his constitutional rights were violated by the officers. An affidavit was attached to the motion and incorporated by reference. The sworn affidavit stated:

1) My name is Edward A. Fliorella, Jr.. I am an attorney actively engaged in the practice of criminal law for the past ten years.

STATE v. PHILLIPS

[132 N.C. App. 765 (1999)]

2) I have reviewed the discovery provided by the State with my client and, based upon those specific facts, and as alleged in this Motion to Suppress, it is the opinion of the undersigned that the relief requested should be granted.

3) That this affidavit is being filed pursuant to N.C.G.S. § § 15A-977.

The trial court summarily denied the defendant's motion to suppress stating that the facts in the affidavit were insufficient to support the motion. The trial court also denied defendant's request to have defendant swear to the facts in the defense attorney's affidavit.

At the 21 April 1997 session of Mecklenburg County Superior Court, the jury was unable to reach a unanimous verdict and the court declared a mistrial. The case was retried at the 27 May 1997 session. At the second trial, the defendant had filed a new affidavit in support of his motion to suppress and the trial judge granted a hearing on the suppression motion. After making findings of fact, the trial court concluded that the evidence obtained as the result of the search of the car and the mailbox was admissible and denied defendant's motion to suppress. The jury found defendant guilty of trafficking cocaine. Defendant appeals.

*Attorney General Michael F. Easley, by Associate Attorney General Anne M. Middleton, for the State.*

*Public Defender Isabel Scott Day, by Assistant Public Defender Julie Ramseur Lewis, for defendant-appellant.*

EAGLES, Chief Judge.

**[1]** First we consider whether the trial court erred in summarily denying defendant's motion to suppress. Defendant argues that the affidavit implicitly adopted the specific facts "as alleged in this Motion to Suppress" and identified the source of that information as the discovery provided by the State. Defendant contends that when read together, the affidavit and motion to suppress are sufficient to meet the requirements of G.S. 15A-977(a) and the trial court did not have the discretion to summarily deny the motion without conducting a hearing. After careful review, we disagree.

G.S. 15A-977(a) states:

(a) A motion to suppress evidence in superior court made before the trial must be in writing and a copy of the motion must be

served upon the State. The motion must state the grounds upon which it is made. The motion must be accompanied by an affidavit containing facts supporting the motion. The affidavit may be based upon personal knowledge, or upon information and belief, if the source of the information and the basis for the belief are stated.

Here, the sworn affidavit defendant filed in conjunction with his motion to suppress stated:

1) My name is Edward A. Fliorella, Jr.. I am an attorney actively engaged in the practice of criminal law for the past ten years.

2) I have reviewed the discovery provided by the State with my client and, based upon those specific facts, and as alleged in this Motion to Suppress, it is the opinion of the undersigned that the relief requested should be granted.

3) That this affidavit is being filed pursuant to N.C.G.S. § § 15A-977.

The affidavit fails to meet the mandatory requirements of G.S. 15A-977. If the motion fails to allege a legal or factual basis for suppressing the evidence, it may be summarily denied by the trial judge. *State v. Satterfield*, 300 N.C. 621, 625, 268 S.E.2d 510, 514 (1980).

The affidavit here does not have a single fact in support of the motion to suppress. G.S. 15A-977(a) explicitly and clearly states that "[t]he motion must be accompanied by an affidavit **containing facts** supporting the motion." [Emphasis added]. Further, the motion does not state how defendant's constitutional rights were violated when the police officer searched his mailbox without a search warrant. The defendant never stated in his motion or affidavit that he had a reasonable expectation of privacy in his mailbox or its contents. Accordingly, the trial court did not err in summarily dismissing defendant's motion to dismiss. This assignment of error is overruled.

[2] Finally, we consider whether the trial court in the second trial erred in denying defendant's renewed motion to suppress. Defendant argues that his rights under the Fourth Amendment and Fourteenth Amendment of the United States Constitution as well as Article I § 19 and § 20 of the North Carolina Constitution were violated when officers searched his mailbox without first obtaining a search warrant because defendant had a reasonable expectation of privacy in his

closed but not locked mailbox which was affixed to his front door. We need not address that issue.

The Fourth Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment, protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. A warrantless search is unconstitutional unless (1) probable cause to search exists and (2) the State satisfies its burden of showing that the exigencies of the situation made search without a warrant imperative. *State v. Allison*, 298 N.C. 135, 141, 257 S.E.2d 417, 421 (1979) (citing *Chimel v. California*, 395 U.S. 752, 23 L. E. 2d 685 (1969)). "Our state constitution, like the Federal Constitution, requires the exclusion of evidence obtained by unreasonable search and seizure." *State v. Carter*, 322 N.C. 709, 712, 370 S.E.2d 553, 555 (1988).

The United States Supreme Court has held that the touchstone of the Fourth Amendment analysis has been "whether a person has a 'constitutionally protected reasonable expectation of privacy.'" *Oliver v. United States*, 466 U.S. 170, 177, 80 L. E. 2d 214, 223 (1984) (quoting *Katz v. United States*, 389 U.S. 347, 360, 19 L. E. 2d 576, 587 (1967)).

> The Amendment does not protect the merely subjective expectation of privacy, but only those "expectation[s] that society is prepared to recognize as 'reasonable.'"
>
> No single factor determines whether an individual legitimately may claim under the Fourth Amendment that a place should be free of government intrusion not authorized by warrant. In assessing the degree to which a search infringes upon individual privacy, the Court has given great weight to such factors as the intention of the Framers of the Fourth Amendment, the uses to which the individual has put a location, and our societal understanding that certain areas deserve the most scrupulous protection from government invasion,[.]

*Id.* at 177-78, 19 L. E. 2d at 223-24. (Citations omitted). However, "[w]hen one voluntarily puts property under the control of another, he must be viewed as having relinquished any prior legitimate expectation of privacy with regard to that property, as it becomes subject to public exposure upon the whim of the other person." *State v. Jordan*, 40 N.C. App. 412, 415, 252 S.E.2d 857, 859 (1979) (holding that

the defendant did not have an expectation in privacy when he put the drugs in the purse of a passenger in the car that defendant was driving).

Here, by throwing the drugs in Long's lap, defendant lost any expectation of privacy he might have had in his property. After giving the drugs to Ms. Long, defendant had no control over what Ms. Long did with the drugs and because defendant had no control over the drugs, he relinquished his prior expectation of privacy in the property. Accordingly, the trial court did not err in denying defendant's motion to suppress because the evidence was not obtained in violation of defendant's Fourth Amendment constitutional right. This assignment of error is overruled.

No error.

Judges MARTIN and McGEE concur.