IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1036

Filed 1 October 2025

Carteret County, Nos. 21CRS051751-150, 21CRS051752-150, 21CRS051753-150

STATE OF NORTH CAROLINA

v.

JOSE FELIX PARDO, Defendant.

Appeal by Defendant from judgments entered 11 April 2024 by Judge Clint D. Rowe in Carteret County Superior Court. Heard in the Court of Appeals 20 May 2025.

> *Attorney General Jeff Jackson, by Deputy Assistant Attorney General John A. Payne, for the State.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Candace Washington, for Defendant-Appellant.*

CARPENTER, Judge.

Jose Felix Pardo ("Defendant") appeals from judgments entered after the trial court denied his motion to suppress and he pleaded guilty to: (1) two counts of trafficking methamphetamine; (2) one count of possession with intent to manufacture, sell, or deliver marijuana; and (3) one count of manufacturing marijuana. Defendant challenges the trial court's denial of his motion to suppress. After allowing Defendant's petition for writ of certiorari ("PWC"), we affirm.

**I. Factual & Procedural Background**

On 13 March 2023, a Carteret County grand jury indicted Defendant for: (1) two counts of trafficking methamphetamine; (2) one count of possession with intent to manufacture, sell, or deliver marijuana; and (3) one count of manufacturing marijuana. On 7 March 2024, Defendant filed a motion to suppress, and the trial court conducted a hearing on 8 April 2024. The evidence presented at the hearing tended to show the following.

On 10 July 2021, an officer with the Morehead City Police Department responded to a call from a local Best Buy regarding a potential theft. The theft involved an unidentified man and a woman, who had left the store by the time the officer arrived. Officers reviewed Best Buy's security camera footage of the incident and filed a report.

On 13 July 2021, at 6:42 p.m., Defendant and Lawrence arrived at Best Buy. Defendant was carrying a fountain drink and black bag. After entering the store, Defendant began browsing available cell phones. While Defendant looked at cell phones, Best Buy's loss-prevention Officer Scarlett Cannon-Vilchez reported to Carteret Emergency Communications that Defendant and Lawrence were the man and woman suspected of the 10 July theft and were back in the store.

After browsing available cell phones, Defendant went to a kiosk, located toward the center of the store, to purchase a cell phone. The kiosk consisted of a register with a computer, a small table, and two customer chairs located on the opposite side of the table as the register. A Best Buy sales associate was at the

register across the table from Defendant. While the sales associate assisted Defendant at the kiosk, Defendant placed his bag in a customer chair and his fountain drink on the table in front of the chair. Once placed in the chair, Defendant's bag was below the top of the table and out of the sales associate's view from his position behind the register.

At 6:57 p.m., the sales associate briefly went to another part of the store, leaving Defendant alone at the kiosk. While the sales associate was away from the kiosk, Defendant unzipped his bag and removed approximately $1,300 in cash. Defendant then zipped his bag and checked the zippers to verify that the bag was closed. Defendant stepped away from the kiosk for approximately two minutes, leaving his bag in the chair, and returned with Lawrence.

At 6:59 p.m., Defendant and Lawrence were standing at the kiosk. Lawrence placed her drink on the table in front of the customer chair next to Defendant's drink. From their position at the kiosk, Defendant and Lawrence observed Officers Charles Millea and Cassidy Clark, both with the Morehead City Police Department, enter the store. Following the officers' arrival, Lawrence nonchalantly walked away from the kiosk towards the entrance. According to Lawrence, she left the kiosk because, after observing the officers, Defendant informed her that he had a gun in the waistband of his pants. Knowing Defendant was a felon, Lawrence placed Defendant's gun in her purse and left the kiosk to take the gun to Defendant's vehicle.

After Lawrence walked away, Defendant remained at the kiosk until the sales associate returned. Defendant handed the sales associate $1,300 to pay for his phone. The sales associate counted the cash multiple times and contacted another employee to request a counterfeit detection pen. Around this time, Officer Clark stopped and detained Lawrence after Lawrence exited the store from the entrance. While the sales associate stood with Defendant's cash, Defendant abruptly walked away without speaking to the sales associate after observing officers detain Lawrence. Defendant also left his bag on the customer chair at the kiosk.

As Defendant walked towards the entrance, Officer Millea stopped and detained Defendant based on the reported theft from 10 July. Officer Millea took Defendant to Best Buy's loss-prevention office while Officer Clark interviewed Lawrence directly outside the office. During this time, Officer Charles Lewis, also with the Morehead Police Department, arrived on scene. Defendant and Lawrence denied stealing from Best Buy on 10 July, even after Officer Millea showed Defendant the security footage of him placing items in his pockets at the store. After searching Defendant and Lawrence, officers discovered the illegally-concealed handgun in Lawrence's purse. But officers did not find stolen merchandise or other contraband on Defendant and Lawrence.

Although the loss-prevention officer initially agreed to not press charges if Defendant paid for the items stolen on 10 July, the store manager wanted to press charges. Officer Millea asked Defendant if he would pay for the items as restitution,

and Defendant agreed. Officers did not place Defendant and Lawrence under arrest at that time, stating that only citations would be issued for the concealed handgun and 10 July theft. Officers told Defendant that he would be allowed to leave the store after paying for the stolen items and his phone.

Thereafter, Officer Millea told Defendant to go pay for his phone and the stolen items at a register. Defendant walked unescorted by officers to the front registers. At this point, officers were primarily focused on Lawrence and the concealed handgun near the front of the store. Defendant made no attempt to walk to the kiosk where his bag and approximately $1,300 remained. According to Officer Lewis, it would have taken "mere seconds" for Defendant to return to the kiosk to retrieve his bag. At the front registers, Defendant removed his wallet and paid for the items stolen on 10 July and his phone.

At 7:44 p.m., as Defendant completed his transactions at the front register, Officer Millea wrote citations for Defendant and Lawrence in his squad car. While Officer Millea wrote the citations, the Best Buy manager handed Officer Clark a bag and advised that Defendant and Lawrence left the bag "near where they were purchasing a phone, prior to law enforcement arrival." When Officer Clark said she wanted to search the bag, Defendant gave a "very wide-eyed look towards" Lawrence, and Lawrence whispered something in Defendant's ear. Officer Clark asked Defendant if there was anything "in there that is going to poke, prod, or stab me or anything?" Defendant answered, "no, hell no, not that I know of."

Officer Clark searched the bag and discovered narcotics and approximately $65,000 in cash. During the search, Defendant admitted the bag was his and that its contents belonged to him. During the approximately 40 minutes Defendant's bag sat unattended in the customer chair at the kiosk, Defendant never mentioned his bag to officers or store employees. Based on the contents of the bag, officers arrested Defendant and Lawrence.

During the motion-to-suppress hearing, the State stipulated that officers did not have a warrant or Defendant's consent to search his bag. On 25 April 2024, the trial court issued a written order denying the motion to suppress, concluding that Defendant intended to abandon his bag and relinquished his reasonable expectation of privacy in the bag. Defendant entered oral notice of appeal from the denial of his motion to suppress. Thereafter, Defendant pleaded guilty to his charged offenses. Prior to the entry of the guilty plea, the State stated that Defendant preserved his right to appeal the denial of his motion. In Defendant's transcript of plea, Defendant and the State agreed that his right to appeal the denial of his motion was preserved. Defendant did not appeal from the trial court's final judgments.

## II. Jurisdiction

"An order finally denying a motion to suppress evidence may be reviewed upon an appeal *from a judgment of conviction*, including a judgment entered upon a plea of guilty." N.C. Gen. Stat. § 15A–979(b) (2023) (emphasis added). Defendant concedes that his notice of appeal was defective because his trial counsel only

appealed from the trial court's denial of his motion to suppress, without giving notice of appeal from the trial court's final judgments. Consequently, Defendant filed a PWC and the State filed a motion to dismiss Defendant's appeal for lack of jurisdiction. *See* N.C. R. App. P. 4; *State v. Hammonds*, 218 N.C. App. 158, 162, 720 S.E.2d 820, 823 (2012) ("Our Supreme Court has said that a jurisdictional default, such as a failure to comply with Rule 4, precludes the appellate court from acting in any manner other than to dismiss the appeal.").

A PWC is a "prerogative writ[]" which we may issue to aid our jurisdiction. *See* N.C. Gen. Stat. § 7A-32(c) (2023). Issuing a PWC, however, is an extraordinary measure. *Cryan v. Nat'l Council of YMCAs*, 384 N.C. 569, 572, 887 S.E.2d 848, 851 (2023). Accordingly, a petitioner must satisfy a two-part test before we will issue a PWC. *Id.* at 572, 887 S.E.2d at 851. "First, a writ of certiorari should issue only if the petitioner can show 'merit or that error was probably committed below.'" *Id.* at 572, 887 S.E.2d at 851 (quoting *State v. Ricks*, 378 N.C. 737, 741, 862 S.E.2d 835, 839 (2021)). "Second, a writ of certiorari should issue only if there are 'extraordinary circumstances' to justify it." *Id.* at 572–73, 887 S.E.2d at 851 (quoting *Moore v. Moody*, 304 N.C. 719, 720, 285 S.E.2d 811, 812 (1982)). "We require extraordinary circumstances because a writ of certiorari 'is not intended as a substitute for a notice of appeal.'" *Id.* at 573, 887 S.E.2d at 851 (quoting *Ricks*, 378 N.C. at 741, 862 S.E.2d at 839).

Defendant argues the trial court erred by denying his motion to suppress.

Specifically, Defendant contends the trial court erroneously concluded that he "intended to abandon the camera bag containing contraband" and "relinquished his reasonable expectation of privacy in the bag." In essence, Defendant argues that despite leaving his bag at the kiosk, he: (1) retained a reasonable expectation of privacy in the bag, and (2) did not voluntarily abandon the bag. Defendant's argument requires this Court to determine whether a defendant, who leaves behind their personal property in the face of a police investigation, retains a reasonable expectation of privacy regarding that property for purposes of abandonment. Absent clarification by this Court, we conclude Defendant's contentions have merit. *See id.* at 572, 887 S.E.2d at 851.

Defendant also demonstrated extraordinary circumstances. Despite failing to enter notice of appeal from the trial court's judgments, Defendant's counsel appealed from the trial court's denial of Defendant's motion to suppress. Furthermore, the State appears to have operated under the same initial misapprehension that Defendant properly preserved his right to appeal the trial court's denial of his motion to suppress. Thus, "it is readily apparent that [D]efendant has lost his appeal through no fault of his own" and "failure to issue a writ of certiorari would be manifestly unjust[.]" *See Hammonds*, 218 N.C. App. at 163, 720 S.E.2d at 823.

Because Defendant demonstrated merit and extraordinary circumstances, we exercise our discretion and allow Defendant's PWC. *See Cryan*, 384 N.C. at 572, 887 S.E.2d at 851. We, therefore, also deny the State's motion to dismiss Defendant's

- 8 -

appeal.

## III. Issue

The issue is whether the trial court erred by denying Defendant's motion to suppress.

## IV. Analysis

In challenging the trial court's denial of his motion to suppress, Defendant argues that certain findings of fact are unsupported by the evidence and the findings of fact do not support the trial court's conclusion that Defendant intended to abandon his bag and relinquished his reasonable expectation of privacy in the bag. We disagree.

" 'The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law. Conclusions of law are reviewed de novo.' " *State v. McCrary*, 237 N.C. App. 48, 51–52, 764 S.E.2d 477, 479 (2014) (quoting *State v. Biber*, 365 N.C. 162, 167–68, 712 S.E.2d 874, 878 (2011)). With de novo review, " '[this Court] considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)). "Competent evidence is evidence that a reasonable mind might accept as adequate to support the finding." *State v. Ashworth*,

248 N.C. App. 649, 651, 790 S.E.2d 173, 176, (2016) (quoting *State v. Chukwu*, 230 N.C. App. 553, 561, 749 S.E.2d 910, 916 (2013)).

## A. Findings of Fact

First, Defendant argues findings of fact 4, 12, 15, 20, 21, 22, 23, and 26 are not supported by competent evidence.

### 1. Finding of Fact 4

Defendant challenges the portion of finding of fact 4 stating: "The bag in the chair sat below the top of the desk and out of the view of the associate in the kiosk."

The unchallenged, and therefore binding, portion of finding of fact 4 explains that officers

> were dispatched and were on their way as a Best Buy sales associate assisted [Defendant] with purchasing and activating a cell phone at a kiosk with a register, a small desk and two (2) chairs for customers. While the sales associate assisted [Defendant] with that purchase, [Defendant] sat his black handbag in one of the chairs at the cell phone kiosk and put his fountain drink on the table in front of the chair.

Surveillance footage depicts that the seat of the chair was below the top of the table on the opposite side of the sales associate's location behind the register.

Notably, finding of fact 4 describes the instance at which Defendant *initially sat* his bag in the kiosk chair outside the sales associate's view while the sales associate assisted Defendant from the kiosk behind the register. The fact that the sales associate *later* stood next to Defendant on the customer-side of the kiosk,

thereby putting the bag in the store associate's view, is immaterial. Accordingly, competent evidence supports finding of fact 4. *See Ashworth*, 248 N.C. App. at 651, 790 S.E.2d at 176.

### 2. Finding of Fact 12

Defendant challenges the following portion of finding of fact 12: "[Defendant] was in the loss prevention office for approximately 30 minutes with [Officer] Millea and [Officer] Cannon-Vilchez." Defendant did not dispute the State's stipulation at the motion-to-suppress hearing that Defendant "was in the loss prevention office . . . for approximately . . . 30 minutes." Finding of fact 12, therefore, is supported by competent evidence. *See Ashworth*, 248 N.C. App. at 651, 790 S.E.2d at 176.

### 3. Findings of Fact 15, 20, 21, and 22

Defendant also challenges findings of fact 15, 20, 21, and 22. Finding of fact 15 provides:

> Officer Millea tells [Defendant] to head right over there for his purchases and [Defendant] walks away toward the front registers unescorted by law enforcement. [Defendant] is free to go about the store and complete his phone purchase. [Defendant] makes no attempt to go toward the kiosk where his bag is still sitting and where he had already given that clerk money for the phone purchase early [t]hat evening. To go to the register where his bag was left would have taken "mere seconds" according to Officer Lewis. [Defendant] instead goes to the front registers and is seen standing alone, looking back at Lawrence and the officer talking to her.

According to finding of fact 20: "Regarding the bag, during this 40-minute period, [Defendant] never returned to it, never evidenced any intention to return to it, nor did he ever mention its presence or existence to the officers." Finding of fact 21 states: "There is no evidence nor is there any allegation by [Defendant] that he had forgotten his bag or that he had any intention to retrieve the bag from the kiosk while the officers were present." Finally, finding of fact 22 explains:

> [Defendant] had the clear ability to retrieve his bag when he was instructed by Officer Millea to "go pay," but made a conscious decision not to do so. [Defendant] also could, at any time, have informed either store personnel or the officers about the bag, but made a conscious decision not to do so.

Officer testimony, surveillance footage, and body camera footage reflects that Defendant left his bag unattended in the customer chair of the kiosk for a 40-minute period while officers detained and questioned him about the 10 July incident. Furthermore, the evidence demonstrates that Officer Millea told Defendant he could pay for the items stolen on 10 July as restitution, along with the cell phone. Officer Millea also informed Defendant that he would be allowed to leave the store after he completed his transactions. Defendant agreed, Officer Millea directed Defendant to pay at the front registers, and Defendant walked away from officers unescorted to the front registers. Defendant never returned to his bag at the kiosk, mentioned his bag to officers, or informed anyone that he forgot his bag and wanted to retrieve it from the kiosk. In addition, Officer Lewis testified that it would have taken Defendant

"mere seconds" to return to the kiosk. Surveillance footage reflects that Defendant went to the front register and stood alone, looking back towards Lawrence while she remained with officers near the loss prevention office. Accordingly, competent evidence supports findings of fact 15, 20, 21, and 22. *See Ashworth*, 248 N.C. App. at 651, 790 S.E.2d at 176.

### 4. Finding of Fact 23

Additionally, Defendant challenges finding of fact 23, which provides that "[Defendant] made no request of the store clerk at the kiosk to either 'safekeep,' hold or secure the bag for him before walking away from it as the officers came into the store . . . ."

Surveillance footage depicts that after officers entered the store and stopped Lawrence, Defendant walked away from the kiosk where the sales associate was holding Defendant's $1,300. Defendant walked away from the kiosk without speaking to the sales associate. Accordingly, competent evidence supports finding of fact 23. *See Ashworth*, 248 N.C. App. at 651, 790 S.E.2d at 176.

### 5. Finding of Fact 26

Finally, Defendant challenges finding of fact 26. Finding of 26 provides:

> The Court finds that [Defendant] relinquished any "reasonable expectation of privacy" in the bag based upon the foregoing. The Court finds that the following specific facts and circumstances, demonstrate that [Defendant]'s intent to abandon the bag containing contraband:

A) The court finds that it would be unreasonable for [Defendant], an indigent defendant, to simply "forget" that he left a bag containing $65,000 in cash unattended in a public place where store employees and customers had access to it;

B) [Defendant] knew the bag contained large amounts of contraband and left the bag, never to return to it, shortly after law enforcement arrived;

C) Shortly before abandoning the bag, [Defendant] disposed of concealable contraband by having [ ] Lawrence discretely remove the gun he possessed from his waistband and conceal it in her purse and remove it from the store, because he knew he was a convicted felon, and he would face legal consequences if he was found in possession of a gun;

D) [Defendant] never returned to the bag, never evidenced any intention to return to it, nor did he ever mention its presence or existence to officers;

E) [Defendant] made no request of the store clerk at the kiosk to either "safekeep," hold or secure the bag for him before walking away from it as the officers came into the store;

F) [Defendant] made no attempt to retrieve the bag, which he could have done on his way to pay for his items at the front register when he was free to "go pay for his phone;" and,

G) [Defendant] never alleged, testified to or articulated an intent to retrieve the bag prior to it being seized.

Given the reasons stated above with the previous challenged findings, and considering the unchallenged findings that are binding on appeal, competent

evidence supports finding of fact 26. *See Ashworth*, 248 N.C. App. at 651, 790 S.E.2d at 176.

## B. Conclusion of Law

Finally, Defendant argues the trial court erroneously concluded that he intended to abandon his bag and relinquished his reasonable expectation of privacy in the bag. Defendant asserts that despite leaving his bag at the kiosk, the findings show he: (1) had a reasonable expectation of privacy in the bag, and (2) did not voluntarily abandon his bag.

The Fourth Amendment of the United States Constitution prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment applies to the States through the Fourteenth Amendment. *See State v. Campbell*, 359 N.C. 644, 659, 617 S.E.2d 1, 11 (2005). "[T]he touchstone of [Fourth] Amendment analysis has been . . . whether a person has a 'constitutionally protected reasonable expectation of privacy.'" *Oliver v. U.S.*, 466 U.S. 170, 177, 104 S. Ct. 1735, 1740–41, 80 L. Ed. 2d 214, 223 (1984) (quoting *Katz v. U.S.*, 389 U.S. 347, 360, 88 S. Ct. 507, 516, 19 L. Ed. 2d 576, 587 (1967) (Harlan, J., concurring)).

An individual has a reasonable expectation of privacy when: (1) they exhibit a subjective expectation of privacy; and (2) "society is willing to recognize that expectation as reasonable." *Kyllo v. U.S.*, 533 U.S. 27, 33, 121 S. Ct. 2038, 2042–43, 150 L. Ed. 2d 94, 101 (2001). In determining whether an individual retains a reasonable expectation of privacy:

> No single factor determines whether an individual legitimately may claim under the Fourth Amendment that a place should be free of government intrusion not authorized by warrant. In assessing the degree to which a search infringes upon individual privacy, the Court has given great weight to such factors as the intention of the Framers of the Fourth Amendment, the uses to which the individual has put a location, and our societal understanding that certain areas deserve the most scrupulous protection from government invasion.

*State v. Phillips*, 132 N.C. App. 765, 770, 513 S.E.2d 568, 572 (1999) (cleaned up). In considering whether abandonment occurred under this analysis, "what is abandoned is not necessarily the defendant's property . . . but his reasonable expectation of privacy therein." *State v. Cromartie*, 55 N.C. App. 221, 224, 284 S.E.2d 728, 730 (1981).

In *Cromartie*, this Court analyzed the issue of abandonment in a public area, relying on *City of St. Paul v. Vaughn*, 306 Minn. 337, 237 N.W.2d 365 (1975). 55 N.C. App. at 223–24, 284 S.E.2d at 730. In *Vaughn*, following a traffic stop, the defendant "got out of his automobile and ran into a nearby business. An officer followed and observed defendant put something underneath a counter. The officer retrieved the item, an eyeglass case, and found it to contain drug paraphernalia." *Cromartie*, 55 N.C. App. at 223–24 , 284 S.E.2d at 730. The seizure of the eyeglass case was upheld in *Vaughn* because when "the presence of the police is lawful . . . and the discard occurs in a public place where the defendant cannot reasonably have any continued expectancy of privacy in the discarded property . . . the property will be deemed

abandoned for purposes of search and seizure." *Id.* at 224, 284 S.E.2d at 730 (cleaned up). As such, *Vaughn* concluded that the defendant abandoned his eyeglass case and had no reasonable expectation of privacy in its contents. *See id.* at 224, 284 S.E.2d at 730.

*Cromartie* reached the same conclusion as *Vaughn*. In *Cromartie*, the defendant tossed an aspirin box containing illegal narcotics three to four feet away from himself as officers were about to search his person. 55 N.C. App. at 222, 284 S.E.2d at 729. Because the officers' presence was lawful and the defendant voluntarily tossed the aspirin box in a public area, this Court concluded that the defendant abandoned his aspirin box and lost his reasonable expectation of privacy therein. *Id.* at 225, 284 S.E.2d at 730–31.

Here, the findings demonstrate that Defendant left his bag in a customer chair at the kiosk and walked to the entrance of the store after observing officers arrive on scene. Officers were lawfully present in the store to investigate the reported 10 July theft involving Defendant. After observing officers, Defendant left his bag, which could be easily unzipped and opened, in a public area specifically intended for customer use. Defendant did so with the knowledge that other customers were in the store, and that his bag contained a significant sum of money and narcotics. Similar to *Cromartie* and *Vaughn*, Defendant voluntarily left his personal property in an open, public area in response to the presence of law enforcement. *See id.* at 222–23, 284 S.E.2d at 729–30. Moreover, Defendant never mentioned his bag to employees

or officers, or attempted to retrieve his bag during the 40-minute period in which he was questioned by officers and completed his transactions at the front register—despite knowing that he would be able to leave the store after he completed the transactions.

It was only when an employee brought Defendant's bag to officers, and officers questioned Defendant about the bag, that Defendant gave a "very wide-eyed look towards" Lawrence and admitted the bag was his. Because Defendant did not disclaim ownership of the bag in this instance, Defendant argues that he demonstrated a reasonable expectation of privacy in the bag. But we must look to more than the fact that Defendant acknowledged the bag was his when confronted by officers as "no single factor" is dispositive to a Fourth Amendment analysis. *See Phillips*, 132 N.C. App. at 770, 513 S.E.2d at 572.

Moreover, Defendant did not demonstrate a reasonable expectation of privacy by merely claiming the bag was his because "what is abandoned is not necessarily the defendant's property . . . but his reasonable expectation of privacy therein." *See Cromartie*, 55 N.C. App. at 224, 284 S.E.2d at 730. Indeed, Defendant, after observing the officers' lawful presence, left his bag "in a public place where [he] [could not] reasonably have any continued expectancy of privacy" in the bag. *See id.* at 224, 284 S.E.2d at 730 (cleaned up). In other words, Defendant did not demonstrate "a subjective expectation of privacy" in his bag that society would "recognize . . . as reasonable." *See State v. Lane*, 280 N.C. App. 264, 268, 866 S.E.2d 912, 916 (cleaned

up).  Accordingly, the trial court did not err by concluding that Defendant intended to abandon his bag and relinquished his reasonable expectation of privacy in the bag. *See State v. Gillard*, 386 N.C. 797, 832, 909 S.E.2d 226, 258 (2024) (explaining intent "is an attitude or emotion of the mind and is seldom, if ever, susceptible of proof by direct evidence" and "must ordinarily be proven by circumstantial evidence").

## V.  Conclusion

Because competent evidence supports the trial court's findings, which in turn support the trial court's conclusion that Defendant intended to abandon his bag and relinquish his reasonable expectation of privacy in the bag, we affirm the trial court's denial of Defendant's motion to suppress.

AFFIRMED.

Judges ZACHARY and WOOD concur.